**Gaya PRASAD, Petitioner,**

v.

**IMMIGRATION and NATURALIZATION SERVICE, Respondent.**

No. 94–70797.

United States Court of Appeals, Ninth Circuit.

Submitted March 15, 1996.*

Opinion Filed May 8, 1996.

Amended Nov. 12, 1996.

Amended Opinion Filed Dec. 3, 1996.

William R. Gardner, San Francisco, CA, for petitioner.

David V. Bernal, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before THOMPSON and KLEINFELD, Circuit Judges, and WILSON, District Judge.**

## ORDER

Pursuant to our Order Denying Rehearing and Amending Opinion filed November 12, 1996, the opinion published in this case at 83 F.3d 315 is amended by the Amended Opinion which is filed herewith.

## OPINION

DAVID R. THOMPSON, Circuit Judge:

Petitioner Gaya Prasad is a native and citizen of the Fiji Islands. He is a Hindu of Indian descent. He petitions for review of the decision of the Board of Immigration Appeals (BIA), which affirmed an immigration judge's (IJ) decision denying his application for asylum and withholding of deportation. We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1105a. We grant the petition for review, reverse the BIA's decision, and remand so that the Attorney General may exercise her discretion under section 208(a) of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1158(a).

## FACTS

One year before the 1987 Fijian national elections, Prasad became active as a local

** Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

delegate of the Hindu-dominated Labour Party. He was also the secretary of the labor union at the cement factory where he had worked for 16 years. After the Labour Party won the elections, Prasad left Fiji in April 1987 for a family vacation. He was in the United States when a military coup by ethnic Fijians overthrew the elected Labour Party government in May 1987.

Upon returning to Fiji in June 1987, Prasad found that civil rights were severely restricted. He testified that if more than two people met in public, they were subject to arrest by military authorities. Prasad testified that friends in the Labour Party told him he would be killed if he continued organizing. Prasad was jailed twice and three times beaten by military officers. He was also forced to resign from his job as a chemist's assistant on threat of being fired.

The first detention began when military officers picked Prasad up outside the factory, where in his capacity as union secretary he had been objecting to a 40 percent wage cut he believed was being disproportionately imposed on ethnic Indians. Prasad testified the officers targeted him because of his Labour Party involvement and accused him of having a gun. Officers searched his home unsuccessfully for a gun and drove him blindfolded to an army barracks, where he was held for five days. During his detention Prasad was questioned about his involvement with the ousted Labour Party, beaten with a gun, and urinated on by his military interrogators. He was also forced to lick the officers' spit off the floor. Persistent requests by Prasad's wife and a friend apparently won his release, although he missed additional days of work while recovering from injuries sustained in jail.

After a second coup in September 1987, Prasad was again jailed, this time for two days. He was again beaten, less severely than the first time.

Prasad testified that in a third incident, he was accosted outside a Hindu temple by military officers who warned him not to practice his religion at a public place, and beat him up. Prasad testified the military's motive for this incident was to prevent Hindus from meeting in groups. Prasad testified these three incidents were directed at him in particular because of his advocacy for the workplace rights of Fijians of Indian descent and his role as a delegate in the ousted Labour Party.

Prasad testified he was also forced to resign from his job at the cement factory. Prasad believed he was forced out due to his outspoken objection to a 40 percent pay cut he believed was disproportionately imposed on ethnic Indians. Prasad testified the reason given for his termination was his unexcused absence from work during the time he was jailed and recovering from his injuries, but the underlying cause of his firing was reaction to his advocacy for ethnic Indians. Although Prasad did not testify to any additional assaults between the end of 1987 and the time he left Fiji in January 1989, he stated he was unable to obtain work during this year because new openings were reserved for ethnic Fijians. Prasad entered the United States on a visitor's visa in January 1989 and applied for asylum, based on fear of persecution on account of ethnicity, religion and political opinion.

■ Because neither the IJ nor the BIA made an explicit finding regarding the credibility of petitioner, we accept the petitioner's testimony as credible. *Hartooni v. I.N.S.*, 21 F.3d 336 (9th Cir.1994).

The BIA affirmed the finding of the IJ that the mistreatment Prasad experienced amounted to harassment and discrimination, but not persecution. Based on these findings, the BIA dismissed Prasad's request for asylum. The BIA held that because Prasad had not demonstrated a well-founded fear of persecution, he necessarily did not meet the higher standard required to prove entitlement to withholding of deportation, which the BIA also denied. Prasad now petitions for a review of the decision of the BIA. He raises only the issue of his eligibility for asylum.

### DISCUSSION

■ We review for abuse of discretion a denial of asylum. *Ramos–Vasquez v. I.N.S.*, 57 F.3d 857, 861 (9th Cir.1995). We review the factual findings underlying the determination under a "substantial evidence" stan-

dard. *Shirazi–Parsa v. I.N.S.*, 14 F.3d 1424, 1427 (9th Cir.1994). We will uphold the BIA's determination unless the evidence compels a contrary conclusion. *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 816–17, 117 L.Ed.2d 38 (1992); *Shirazi–Parsa*, 14 F.3d at 1427.

■ To qualify for asylum, an alien must show he or she is a refugee as defined in 8 U.S.C. § 101(a)(42). This is established by evidence of past persecution, or by evidence that the alien has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. *Ramos–Vasquez*, 57 F.3d at 862 (citing *INS v. Cardoza–Fonseca*, 480 U.S. 421, 423, 107 S.Ct. 1207, 1208–09, 94 L.Ed.2d 434 (1987)). A necessary element of a claim of past persecution is that the alien must show he was persecuted, because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *Kotasz v. INS*, 31 F.3d 847, 852 (9th Cir.1994). It is not sufficient to show he was merely subject to the general dangers attending a civil war or domestic unrest. *Estrada–Posadas v. I.N.S.*, 924 F.2d 916 (9th Cir.1991).

■ Prasad established past persecution on account of his political activity. He was jailed twice, once for five days and another time for two days. During these detentions, he was beaten and subjected to sadistic and degrading treatment at the hands of his government captors. He was also beaten on another occasion by agents of the government. He lost his job due to his activism on behalf of ethnic Indians and the Labour Party. These incidents occurred in the context of a climate of official prejudice against ethnic Indians in general, but were directed against Prasad in particular.

An alien who establishes past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1)(i). This presumption may be overcome by evidence "that since the time the persecution occurred conditions in [Fiji] have changed to such an extent that [Prasad] no longer has a well-founded fear of being persecuted if he were to return." *Id.*; *Matter of Chen*, Interim Decision of the BIA 3104 at 4 (1989).

■ Prasad was entitled to the benefit of this presumption. The BIA did not apply it, however, because, relying on *Prasad v. I.N.S.*, 47 F.3d 336 (9th Cir.1995), the BIA concluded Prasad had not suffered past persecution. *Prasad* is inapposite. There, a brief detention and non-serious beating were found not to constitute persecution. *Prasad* is distinguishable on its facts because specific factual indicators of persecution absent in that case are present here. These include multiple detentions, serious injury, government involvement, and a continuing government interest in the petitioner.

We conclude a reasonable factfinder would be compelled to find Prasad suffered past persecution. Because past persecution was established, a rebuttable presumption arose that Prasad had reason to fear similar persecution in the future. *Matter of Chen*, Interim Decision 3104 at 4. The INS did not rebut this presumption. Prasad, therefore, is statutorily *eligible* for asylum. This conclusion, however, does not entitle Prasad to asylum. If an applicant is statutorily eligible for asylum, the next inquiry "is whether the applicant is *entitled* to asylum as a matter of discretion." *Kazlauskas v. INS*, 46 F.3d 902, 905 (9th Cir.1995); *see also* 8 U.S.C. § 1158(a). Under section 1158(a), the Attorney General [1] has the authority to grant asylum as a matter of discretion. *Yang v. INS*, 79 F.3d 932, 934–35 (9th Cir.1996). We, therefore, remand to allow the Attorney General to determine, in the exercise of her discretion, whether to grant asylum to Prasad.

## CONCLUSION

Prasad's petition for review is granted. The BIA's decision determining that Prasad is not statutorily eligible for asylum is re-

---

1. This discretionary authority has been delegated to IJs and their decisions are reviewable by the BIA. *Kazlauskas,* 46 F.3d at 905 n. 2.

versed, and this case is remanded to the BIA. Prasad has not challenged in this appeal the BIA's denial of his claim to withholding of deportation; accordingly, we do not consider that claim.

REVIEW GRANTED. REVERSED and REMANDED.