116 F.3d 483
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mohammad FAZELI-TABAR, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 95-70858, Auq-skm-jdk.
 United States Court of Appeals, Ninth Circuit.
 Decided June 5, 1997.
Argued and Submitted April 10, 1997.
 
 Appeal from the Board of Immigration Appeals.
 Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER, District Judge.**
 MEMORANDUM*
 Petitioner Fazeli-Tabar appeals the decision of the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ") decision except as to voluntary departure. The IJ held that Fazeli-Tabar was not entitled to asylum or withholding of deportation and denied voluntary departure.
 Background
 Before the revolution in Iran, Fazeli-Tabar was a cadet studying military intelligence. He planned on becoming an officer in the Shah's army. Fazeli-Tabar's father, Sayd Hashem Fazeli-Tabar, a former officer in the Shah's army, spent ten years working in the American Embassy as a body guard for senior United States military officers.
 When the revolution occurred, revolutionary authorities called Sayd a traitor who had to face a military court because of his connection with the American Embassy. Fazeli-Tabar's family moved from their government quarters to his grandmother's house, because their lives had been threatened. Sayd went into hiding and only visited his family in the middle of the night--until he disappeared. Fazeli-Tabar's life was threatened, and he also went into hiding, under an assumed name.
 Authorities actively sought Fazeli-Tabar and Sayd. The authorities interrogated and harassed Fazeli-Tabar's mother, Asgar, many times to learn where Fazeli-Tabar and Sayd were hiding. Fazeli-Tabar's brother, Jalal, was arrested and held for two months without charges. When Asgar sought Jalal's release, the authorities stated they would release Jalal in exchange for Fazeli-Tabar. Further, Fazeli-Tabar's name was on a list of people wanted by the authorities, and one guard warned that if Fazeli-Tabar was arrested, "that's the end of it."
 The IJ determined that Fazeli-Tabar was credible and, therefore, accepted his account of events. Nonetheless, the IJ found that Fazeli-Tabar had not established a well-founded fear of persecution in Iran, and, therefore, that he was not eligible for asylum. The IJ also held that even if Fazeli-Tabar had established such a fear, it would still deny Fazeli-Tabar's request for asylum on discretionary grounds, based on his refusal to cooperate with border patrol agents questioning him about his illegal entry from Mexico into the United States. Fazeli-Tabar had invoked his Fifth Amendment right and refused to answer their questions.
 Since the BIA adopted the IJ's evidentiary findings as its own, we review the IJ's factual findings to determine whether the BIA's adoption of those findings is supported by substantial evidence. Alaelua v. INS, 45 F.3d 1379, 1381-82 (9th Cir.1995).
 Discussion
 Asylum
 Under section 208(a) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1158(a) (1970 & Supp.1996), the Attorney General has the discretion to grant asylum to an alien who is a refugee. Singh v. Ilchert, 69 F.3d 375, 378 (9th Cir.1995). To qualify as a refugee, an asylum applicant must show either past persecution or a "well-founded fear of persecution" on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A).
 The test for "well-founded fear" contains both subjective and objective components. Singh v. Ilchert, 63 F.3d 1501, 1506 (9th Cir.1995). "The subjective component requires that the applicant have a genuine concern that he will be persecuted," Aguilera-Cota v. INS, 914 F.2d 1375, 1378 (9th Cir.1990), and may be satisfied by the applicant's testimony that he genuinely fears persecution. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The objective component requires that the applicant establish a reasonable fear of persecution on a relevant ground by credible, direct, and specific evidence. Id. However, the test is not a "more likely than not" one. INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987). "Even a ten percent chance that the [feared persecution] will take place can be enough to establish a well-founded fear." Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir.1987).
 This Court reviews the BIA's decision denying asylum under two-tiered standard. Mendez-Efrain v. INS, 813 F.2d 281, 282 (9th Cir.1987). First, the BIA's determination regarding refugee status must be upheld if it is " 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)); Prasad v. INS, 101 F.3d 614 (9th Cir.1996). Under this standard, the factual findings of the BIA will be reversed only where the evidence is such that a reasonable fact-finder would be compelled to conclude that the requisite fear of persecution existed. Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995). Second, if refugee status has been established, this Court reviews the BIA's ultimate denial of asylum for an abuse of discretion. Lopez-Galarza v. INS, 99 F.3d 954, 960 (9th Cir.1996).
 Fazeli-Tabar presented substantial probative evidence that he has an objectively reasonable fear of persecution if returned to Iran. The IJ's finding that Fazeli-Tabar did not have a well-founded objective fear of persecution is not supported by the record.
 First, the evidence showed that Fazeli-Tabar's family was endangered based on their family affiliation. The family received threats and had to leave their military housing and ultimately received asylum outside Iran. His father disappeared and died (or was killed). His mother and sister were repeatedly interrogated as to Fazeli-Tabar's and Sayd's whereabouts. His brother Jalal was imprisoned by the revolutionary guard.
 Second, Fazeli-Tabar fits the profile of politically-persecuted individuals in Iran. While the Department of State's "Country Conditions" opinion letter states that it is unaware of any present persecution against former mid- and low-level officials of the Shah's bureaucracy, it reaches that conclusion based on a finding that those officials served the new regime during the Iran-Iraq war. Fazeli-Tabar did not participate in the Iran-Iraq war, however, and thus has an objectively reasonable fear of future persecution based on his training as a cadet and the authorities' belief that he hid his father.
 Third, the evidence demonstrated that the revolutionary authorities wanted Fazeli-Tabar because of his opposition to the revolution. The evidence indicated that the lives of Fazeli-Tabar's family were threatened. Sayd was called a traitor who would have to face a military court. Sayd went into hiding and then disappeared. A revolutionary guard told Asgar that if Fazeli-Tabar was arrested, "that's the end of it." Fazeli-Tabar also testified that if he presented himself for military service, he would be arrested.
 Finally, the IJ's speculation that Sayd died in a military hospital "as a military veteran, receiving medical treatment," and that the authorities wanted Fazeli-Tabar to press him into military service, is not supported by the record.
 In sum, Fazeli-Tabar, his wife, and his mother all testified that they believed that Fazeli-Tabar would be arrested and/or killed if he was returned to Iran. Fazeli-Tabar also testified that the authorities killed 90% of the people that they caught who had worked at the American Embassy in Teheran. This credible and uncontradicted evidence compels us to find that the IJ erred in concluding that Fazeli-Tabar did not have a subjectively genuine fear of future persecution. Thus, having established both objective and subjective fear that was reasonable, he is eligible for asylum under 8 U.S.C. § 1158(a).
 Once eligibility for asylum is established, it is still within the Attorney General's discretion whether to grant or deny asylum. Lopez-Galarza, 99 F.3d at 960; 8 U.S.C. § 1158(a). The BIA abuses its discretion if the decision is "arbitrary, irrational, or contrary to law." Lopez-Galarza, 99 F.3d at 960.
 The IJ stated that he would deny discretionary relief on the ground that Fazeli-Tabar refused to speak to border patrol agents questioning him about his border crossing. Because the BIA agreed that Fazeli-Tabar did not qualify as a "refugee," it did not consider whether, as a discretionary matter, it should grant asylum to Fazeli-Tabar. However, in the context of whether the IJ should have granted voluntary departure, the BIA noted that "with regards to his discretionary findings, we find that the Immigration Judge placed undue reliance on the respondent's choice not to testify regarding his manner of entry into the United States, invoking his constitutional right against self-incrimination." We agree. Since the BIA did not consider whether to exercise its discretion to grant Fazeli-Tabar asylum initially, we remand to the BIA to make such a determination. Prasad, 101 F.3d at 617 (finding that petitioner was statutorily eligible for asylum and remanding to BIA to allow the Attorney General to determine, in exercise of her discretion, whether to grant asylum).
 Withholding of Deportation
 Under section 243(h) of the INA, the Attorney General must withhold deportation of an alien to a country if the Attorney General determines that the "alien's life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1) (1970 & Supp.1996); see Ilchert, 63 F.3d at 1506.
 A "clear probability of persecution" or a "more likely than not" standard is applicable to a withholding of deportation claim. Singh, 63 F.3d at 1506 (quoting Artega v. INS, 836 F.2d 1227, 1228-29 (9th Cir.1988), and INS v. Stevic, 467 U.S. 407, 424 (1984); (citations omitted)). This standard of proof is more stringent than the "well-founded fear of persecution" standard for asylum eligibility. Id.
 The IJ concluded, and the BIA affirmed the finding, that Fazeli-Tabar had not established his statutory eligibility for withholding of deportation under 8 U.S.C. § 1253(h)(1). Because we grant the petition for review under 8 U.S.C. § 1158(a), we reserve ruling on whether the determination that Fazeli-Tabar was not eligible for withholding of deportation was supported by substantial evidence.
 CONCLUSION
 We find that Fazeli-Tabar established his eligibility for asylum under 8 U.S.C. § 1158(a). We therefore remand for the BIA to exercise its discretion as to whether to grant Fazeli-Tabar's request for asylum. We reserve ruling on whether Fazeli-Tabar was eligible for withholding of deportation under 8 U.S.C. § 1253(h).
 REVERSED AND REMANDED.
 
 
 
 **
 Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3