141 F.3d 1178
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marco Antonio OLIVOS-TRUJILLO, Petitioner,
v.
Immigration and Naturalization Service Respondent.
 No. 96-70459.
INS No. Afq-olb-med.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 27, 1998.
Decided Mar. 25, 1998.
 
 Petition to Review a Decision of the Immigration and Naturalization Service.
 Before FLETCHER, MAGILL** and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Petitioner appeals the Board of Immigration's (BIA) final order of deportation denying petitioner's claim for asylum or withholding of deportation. We have jurisdiction, 8 U.S.C. § 1105a(a), and reverse and remand for further proceedings.[1]
 
 I.
 
 3
 Petitioner is a native of Peru who entered the United States without inspection in 1991. His wife joined him in 1993. Petitioner was in the marine infantry of the Peruvian armed forces from June 1984 through December 1985. On June 12, 1985, petitioner was travelling from his home to his naval base. He was in military uniform but on a civilian bus. The bus was hijacked by the Shining Path guerillas. The guerillas forced petitioner to disembark from the bus. They inspected his identification, then slashed his face with a knife and shot him in the stomach. He spent six months in the hospital in recovery. He was discharged from the military upon his release from the hospital.
 
 
 4
 After his discharge, petitioner received a number of threats. About every three months bulletins from the Shining Path exclaiming "death to the military" were left at the home he shared with his parents, sister, and wife. He was detained numerous times by members of the Shining Path and told that if he did not join their forces he and his family would be killed. After he fled Peru in 1990 the Shining Path continued to threaten his family. In 1992 his father, who was a member of the national police, was left paralyzed by a car bomb. In 1994 the guerillas entered his family's home looking for documents or letters that would reveal his location. His family's home was ransacked, and his mother was tied up and beaten. Most recently he received a letter from a friend in Peru who was detained and beaten by the Shining Path who were looking again for his whereabouts.
 
 
 5
 The immigration judge (IJ) found that Mr. Olivos-Trujillo was credible. The IJ also did not doubt that petitioner had a subjective fear of future persecution. However, the IJ found that petitioner had not suffered past persecution on account of his political opinion. Rather, the IJ believed that petitioner was attacked as an act of war. The IJ also held that petitioner did not have a well founded fear of future persecution because of his belief that had the Shining Path wanted to kill petitioner, they would have already done so after his discharge from the military or in subsequent meetings with petitioner. The BIA affirmed in a split decision.
 
 II.
 
 6
 To establish eligibility for asylum, petitioner must show that he is a refugee, i.e., that he has experienced past persecution or has a well founded fear of future persecution on account of race, religion, nationality, membership in a social group, or political opinion. Singh v. Ilchert, 63 F.3d 1501, 1505 (9th Cir.1995); Immigration and Nationality Act (INA) § 101(a)(42)A); 8 U.S.C. § 1101(a)(42(A). To qualify for asylum based on a claim of fear of future persecution, petitioner must show that he genuinely fears future persecution and that future persecution is a reasonable possibility. Singh, 63 F.3d at 1506.
 
 
 7
 To qualify for withholding of deportation petitioner must show that he "more likely than not" will be subject to future persecution. Gomez-Saballos v. INS, 79 F.3d 912, 914 (9th Cir.1996).
 
 
 8
 We review denial of an asylum claim for an abuse of discretion. Prasad v. INS, 101 F.3d 614, 616 (9th Cir.1996). Factual findings of the BIA are reviewed under a "substantial evidence" standard; we will uphold the BIA unless the evidence compels a contrary conclusion. Id. at 616-17.
 
 II. Past Persecution
 
 9
 Petitioner argues that he was the victim of past persecution, based on his political opinion, and as such is entitled to a presumption that he has a well founded fear of future persecution. As he correctly notes, eligibility for asylum may be based on evidence of past persecution alone. Singh, 63 F.3d at 1505-06 (citing Acewicz v. INS, 984 F.2d 1056, 1062 (9th Cir.1993)).
 
 
 10
 The government argues that petitioner has not proven that he was assaulted on the bus by the Shining Path because of his political opinion. We agree that petitioner has produced no evidence that he was initially attacked because of an imputed political opinion. Petitioner was assaulted while in uniform and while in transit to active duty. We have held that such an attack is a "risk of civil war" that does not amount to persecution. See Montecino v. INS, 915 F.2d 518, 520 (9th Cir.1990) (noting that, "[i]n a civil war persons engaged in military service will be shot at by the other side."). Here, petitioner offers no evidence he was singled out for any reason other than that he was a member of the opposition. Indeed, he testified that other soldiers also had been attacked by the guerillas in the same area and in the same way as he had been attacked.
 
 III. Well Founded Fear of Future Persecution
 
 11
 Petitioner's claims are not based on a single incident of violence. After petitioner left the military both he and his family were threatened and, in the case of his mother, father and friend, physically assaulted. On this basis we find that petitioner has a well founded fear of future persecution on account of imputed political opinion.
 
 A.
 
 12
 The government asserts that petitioner has not preserved on appeal his claim that he has a well founded fear of future persecution. We disagree. Although we note that petitioner's brief to this court is not well organized and that his arguments appear to be intertwined, his brief is sufficient to put the government on notice of his argument that he fears future persecution. First, in his description of asylum law, the petitioner states that there are two ways in which a petitioner may qualify for asylum, i.e., by proving past persecution or by showing a well founded fear of future persecution. Petitioner also sets out the distinct legal standard for each.[2] Second, petitioner cites extensively in his brief to that part of his testimony and background that goes to the issue of a well founded fear of future persecution. Had petitioner meant to argue only that he suffered from past persecution, it would have been unnecessary to do either of these things.
 
 B.
 
 13
 We held in Montecino that one cannot seek asylum on the basis of dangers inherent to serving in the military. We also held, however, that ex-military personnel who continue to be threatened by the opposition may be eligible for asylum on the basis that one's persecutors identify one with the government served. See 915 F.2d at 520. Petitioner presents such a case. Although he initially was the victim of an act of war, it is "not civil war to kill" or threaten petitioner after he has left the armed services. Id. Rather, after petitioner was discharged from the military, the guerillas' continued harassment and interest in petitioner and his family was guided by petitioner's imputed status as a government-sympathizer. The Shining Path threatened him a number of times after he left the military and the recent attack on his mother and letter from his friend suggest that the guerillas continue to try to ascertain his whereabouts.
 
 
 14
 The BIA's determination that petitioner does not have a well founded fear of future persecution is not supported by substantial evidence; indeed, the evidence compels the opposite result. The BIA accepted the IJ's findings that petitioner had a subjective fear of future persecution. The BIA refuted that petitioner's fear was reasonable and objective because of the BIA's supposition that had the Shining Path wanted to kill the petitioner, they would have already done so. This belief is without support and irrelevant to our inquiry. What is relevant, and what the BIA seemingly ignored, is that petitioner was threatened a number of times over a lengthy period, that his mother, father and friend were physically assaulted, and that the Shining Path continues to try to ascertain petitioner's whereabouts. Such activities provide a reasonable and objective basis for petitioner's fears should he have to return to Peru.
 
 
 15
 The BIA also held that petitioner's fears were not reasonable because conditions had changed in Peru and the Shining Path's influence was not country-wide. The evidence upon which the BIA relies does not support that finding. The State Department report cited by the BIA acknowledged that the Shining Path continues to target a wide variety of persons despite the fact that some of its leaders have been incarcerated. The report pointed out, for example, that the Shining Path makes use of car bombs, the device that left petitioner's father paralyzed. The report also acknowledged the Shining Path's role in bombing the United States embassy in 1993. The BIA suggested that the strength of the Shining Path has diminished substantially since the election of President Fujimoro in 1990, and that the Shining Path has the capacity to target only its most prominent enemies. Yet petitioner and his family and friends have been threatened continuously over a period of years and the attack on his father, mother and friend came well after President's Fujimoro's election. We note also that we very recently considered and rejected the notion that conditions had changed substantially in Peru where the issue in question was the strength and influence of the Shining Path. See Gonzales-Neyra v. INS, 122 F.3d 1293, 1296 (9th Cir.1997), modified, 133 F.2d 726. Finally, neither the report nor any evidence suggests that there are safe havens within Peru in which those who have been targeted by the Shining Path might live safely and without fear.
 
 IV.
 
 16
 We conclude on the basis of the facts of this case that it is more likely than not that petitioner will face persecution should he return to Peru. The evidence shows a long history of threats to petitioner personally and to his family and that the Shining Path continues to search for his whereabouts. Although the government claims that conditions have changed in Peru, it is significant that the threats and attacks on petitioner's family have occurred since President Fujimoro was elected and the Shining Path's most prominent leaders were jailed. The fact that petitioner himself has been personally targeted by the Shining Path and that conditions have not changed in respect to the Shining Path's ability to threaten those close to petitioner provide substantial evidence that petitioner's life will be in danger upon returning to Peru and that he is entitled to withholding of deportation.[3] See Gonzales-Neyra, 122 F.2d at 1297.
 
 V.
 
 17
 Given our conclusion that Mr. Olivos-Trujillo has established a clear probability of future persecution on account of imputed political opinion, he may not be deported. He is also eligible for asylum. We direct that petitioner be granted withholding of deportation, and remand so that the Attorney General can determine whether asylum should be granted.
 
 
 18
 REVERSED and REMANDED for further proceedings.
 
 
 19
 NELSON, T.G., Circuit Judge, dissenting.
 
 
 20
 Petitioner did not argue here that he had shown a well-founded fear of persecution independent of the attack on the bus. The INS noted this failure in its responding brief, and petitioner did not file a reply brief to correct any misapprehension accruing to the readers of the opening brief.
 
 
 21
 If we are going to decide an issue not briefed or argued by petitioner, we are still not free to ignore the rules which govern, and limit, our review. The BIA relied on three factors in denying petitioner's claim of future persecution:
 
 
 22
 First, the BIA found that Olivos had not factually established fear of future persecution. Second, the BIA found that Olivos failed to show a countrywide fear of persecution from the SP. In support of this reason for denying asylum, the BIA cited the Bureau of Democracy, Human Rights and Labor ("BDHRL") profile of Peru, which stated: "Peru is a large, rugged country, and the guerrillas operate with relatively unsophisticated communications. There is no evidence that a nationwide guerrilla information network for tracking perceived opponents exists." The BIA also cited Singh v. Moschorak, 53 F.3d 1031 (9th Cir.1995), which held that where there is a danger of persecution in a single village from guerrillas and no showing that it exists elsewhere, an alien has failed to establish eligibility for asylum.
 
 
 23
 Third, the BIA found that the changed conditions in Peru make it unlikely that Olivos might actually suffer persecution upon return there. In support of its finding of changed conditions, the BIA cited two things: the BDHRL profile which stated, "The recent setbacks suffered by the Shining Path ... have further reduced [its] capability, and only those who the guerrillas consider to be their most important enemies are likely to be in danger"; and a newspaper article submitted by Olivos which stated, "In [the] campaign, [President] Fujimori took credit ... for dominating the ... Shining Path[] guerrilla movement."
 
 
 24
 What we have done in this case is reviewed de novo the evidence considered by the BIA and decide the case differently. In Elias-Zacharias v. INS, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), the Supreme Court specifically told us that the BIA's decision must be upheld unless petitioner's evidence "was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." The record here simply will not support this burden.
 
 
 25
 I dissent.
 
 
 
 **
 Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 repeals 8 U.S.C. § 1005a and replaces it with a new judicial review provision to be codified at 8 U.S.C. § 1252. See IIRIRA § 306(c)(1), Pub.L. No. 104-208, 100 Stat. 3009 (Sept. 30 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104-302, 110 Stat. 3656. However, because the BIA's final decision in this case was entered before the IIRIRA became effective, we continue to have jurisdiction over the instant petition under 8 U.S.C. § 1005a. See IIRIRA § 309(c)(1)
 
 
 [2]
 We also note that both the IJ and BIA addressed petitioner's two, distinct claims for asylum in their opinions
 
 
 [3]
 Because we conclude that petitioner is entitled to withholding of deportation, it follows that he is eligible for asylum under the less stringent well founded fear of future persecution standard