* The panel unanimously finds this case suitable for decision without oral argument. Rule

## III. CONCLUSION

In sum, we affirm the district court's judgment that the parties lawfully allocated liability for the freight charges through the "Waiver of Subcontractor" forms and that the Carriers' drivers had ostensible authority to sign the waivers.

**Silvia RIVERA–MORENO, a.k.a. Vilma Aracely Argueta, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 98–71463**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 9, 1999.*

Filed May 23, 2000

34(a), Federal Rules of Appellate Procedure; Rule 34–4, Ninth Circuit Rules.

Ralph J. Leardo, Law Offices of Nancy Ann Fellom, San Francisco, California, for the petitioner.

James A. Hunolt, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: ALDISERT,[**] O'SCANNLAIN and HAWKINS, Circuit Judges.

Opinion by Judge ALDISERT; Concurrence by Judge MICHAEL DALY HAWKINS.

ALDISERT, Circuit Judge:

The principal question for decision is whether retaliation against a nurse, who refused to join a guerrilla movement to give medical care to their wounded, constitutes "persecution ... on account of political opinion" under § 101(a)(42) of the Immigration and Nationality Act ("the Act" or "INA"), 8 U.S.C. § 1101(a)(42) (1998).

Silvia Rivera–Moreno, a.k.a. Vilma Aracely Argueta, a native and citizen of El Salvador, petitions for review of the Board of Immigration Appeals' ("BIA") denial of her application for asylum and withholding of deportation. She claims she is eligible for asylum because she is unable or unwilling to return to El Salvador "because of persecution or a well-founded fear of persecution on account of ... political opinion." *Id.*

This court follows the doctrine of "hazardous neutrality," in which a lack of political opinion may constitute a political opinion for purposes of the INA. We define hazardous neutrality as "show[ing] political neutrality in an environment in which political neutrality is fraught with hazard, from governmental or uncontrolled anti-governmental forces." *Sangha v. INS,* 103 F.3d 1482, 1488 (9th Cir.1997).

This court has explained the elements of hazardous neutrality:

We have held that political neutrality can be a political opinion under the Act. *See, e.g., Maldonado–Cruz v. INS,* 883 F.2d 788, 791 (9th Cir.1989); *Arteaga v. INS,* 836 F.2d 1227, 1231–1232 (9th Cir. 1988) ]. "Political neutrality" may include the absence of any political opinion. *Arriaga–Barrientos v. INS,* 937 F.2d 411, 413 (9th Cir.1991). An applicant can establish his political neutrality by pronouncement, *id.* at 414; *Bolanos–Hernandez v. INS,* 767 F.2d 1277, 1286–1287 (9th Cir.1984) ], or by his actions, *Ramos–Vasquez v. INS,* 57 F.3d 857, 863 (9th Cir.1995) (applicant deserts rather than illegally shoot deserters.)

*Sangha,* 103 F.3d at 1488.

We adhere to this precept[1] notwithstanding the statement of the Supreme Court in 1992:

Elias–Zacarias appears to argue that not taking sides with any political faction is itself the affirmative expression of a political opinion. *That seems to us not ordinarily so,* since we do not agree with the dissent that only a "narrow, grudging construction of the concept of 'political opinion,'" ... would distinguish it from such quite different concepts as indifference, indecisiveness, and risk averseness.

*INS v. Elias–Zacarias,* 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis added).

---

[**] Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. Other Courts of Appeals have refused to explicitly adopt the doctrine of political neutrality. *See, e.g., Alvarez–Flores v. INS,* 909 F.2d 1, 6 n. 4 (1st Cir.1990) ("Only the Ninth Circuit clearly has held that neutrality is a political opinion within the meaning of the Act."); *Perlera–Escobar v. Executive Office for Immigration,* 894 F.2d 1292, 1297–98 (11th Cir.1990) (pointing out that acceptance of neutrality as a political opinion "would create a sinkhole that would swallow the rule"); *Cruz–Lopez v. INS,* 802 F.2d 1518, 1520 n. 3 (4th Cir.1986) (declining to follow the Ninth Circuit rule); *M.A. A26851062 v. INS,* 899 F.2d 304, 315 (4th Cir.1990) (en banc) (refusing to accept or reject neutrality as a political opinion). The Eighth Circuit has not adopted our teachings, but it has implied that it may recognize neutrality as a political opinion when a petitioner shows "that their fear of persecution is connected to or based on their political neutrality .... [not] fear of [ ] general violence and unrest." *Lopez–Zeron v. United States,* 8 F.3d 636, 638 (8th Cir.1993).

■ To be sure, the Court did not reach the question whether neutrality amounts to holding a political opinion, because it held that Elias–Zacarias did not meet the high burden of showing that "the record ... *compels* the conclusion that he has a 'well-founded fear' that the guerrillas will persecute him *because of* that political opinion." *See id.* (first emphasis added). Thus, our task in similar cases subsequent to *Elias–Zacarias* is to determine whether the record compels the conclusion that the petitioner has a well-founded fear of persecution *because of* his or her political opinion. *See id.*; *see, e.g., Borja v. INS,* 175 F.3d 732, 735 (9th Cir.1999) (in banc) (holding that evidence must compel the conclusion that guerrillas persecuted petitioner on account of her political opinion); *Gonzales–Neyra v. INS,* 122 F.3d 1293, 1296 (9th Cir.1997) (requiring that evidence show persecution has been or will be on account of political opinion); *Sangha,* 103 F.3d at 1487 (stating that "[a]pplicants can no longer establish that their persecution was 'on account of' political opinion by inference"). Here, Petitioner argues that a reasonable fact finder would be compelled to find that she was persecuted on account of her neutral political belief.

## I.

Rivera–Moreno worked as an assistant nurse at a local health unit in Perquin, El Salvador. Her first contact with the guerrillas was in 1980, when they came into her clinic and took medicine from her at gunpoint. In 1981 the guerrilla forces took over Perquin and demanded that she join them and give medical care to their wounded. She refused and explained in her testimony that she told them: "I didn't belong to any party. My rule was to help anybody. It didn't matter if it came from the guerrillas or the army or any group." E.R. at 34. Regardless, they forced her to

care for their wounded for nine days, at which time she escaped and moved to the town of San Miguel.

In 1989, eight years after her kidnaping in Perquin, guerrillas took over San Miguel and discovered documents that indicated that Rivera–Moreno was a nurse. The guerrillas again pressured her to join them, but she refused. This time she did not repeat her statements of neutrality expressed eight years earlier. She testified that "[the guerrillas] told me that they needed me very much and I refused to accompany them. I opposed that." E.R. at 35. The record contains no evidence to suggest that the guerrillas in San Miguel knew of her political neutrality. The San Miguel guerrillas retaliated against her for refusing to help them by destroying her house with a bomb. They told her that the bomb was "just the beginning," E.R. at 36, and again forced her to care for their wounded. She escaped after three days of captivity.

Rivera–Moreno returned to San Miguel two years later, at which time the guerrillas left her a handwritten note demanding that she return to Perquin to assist them. She ignored the note and then received a second typewritten note, which demanded that she report to Perquin within 15 days or her life would be in danger. About nine days after receiving this note, she fled to the United States on April 27, 1991.

Two days after arriving here, the Immigration and Naturalization Service ("INS") initiated exclusion proceedings and charged her with being excludable under 8 U.S.C. § 1182(a)(19), as an immigrant who has procured a visa or other documentation by fraud or by willfully misrepresenting a material fact and not being in possession of a valid immigrant visa. Petitioner applied for asylum under 8 U.S.C. § 1158(a)[2] and withholding of deportation

---

2. Section 1158(a) reads:
 (1) In general
 Any alien who is physically present in the United States or who arrives in the United

States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United

under 8 U.S.C. § 1253(h).[3] The immigration judge denied asylum and withholding of deportation and granted voluntary departure. On appeal, the BIA agreed that Petitioner was not eligible for asylum because she was not persecuted as a result of an actual or imputed political opinion.

The BIA's jurisdiction arose under 8 C.F.R. § 3.1(b)(2). This court has jurisdiction to review the petition under 8 U.S.C. § 1105a.[4] The petition was timely filed as provided by 8 U.S.C. § 1252(b)(1).

■ The BIA's factual decision that an alien has not established eligibility for asylum and withholding of deportation is reviewed under the substantial evidence standard. *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. 812; *Singh v. INS*, 134 F.3d 962, 966 (9th Cir.1998). The Court has emphasized that this standard is extremely deferential, requiring a reviewing court to uphold the Board's denial unless an alien demonstrates "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812.

## II.

■ Withholding deportation is distinct from granting asylum. Withholding only bars deporting an alien to a particular country; asylum permits an alien to remain in the United States and to apply for permanent residency after one year. *INS v. Aguirre–Aguirre*, 526 U.S. 415, 119 S.Ct. 1439, 1443, 143 L.Ed.2d 590 (1999).

States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title.
8 U.S.C. § 1158(a).

**3.** This provision was removed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, § 307(a) (1996). Because Rivera–Moreno's case was brought before the effective date of

■ Asylum is granted at the discretion of the Attorney General if the alien qualifies as a "refugee."

The term "refugee" means [ ] any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . .

8 U.S.C. § 1101(a)(42)(A). Withholding deportation is mandatory if the "alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1253(h)(1). We will examine Petitioner's application for asylum first, because if she fails to satisfy the requirement for asylum, she will necessarily fail the more stringent requirement for withholding deportation. *Kazlauskas v. INS*, 46 F.3d 902, 907 (9th Cir.1995).

## III.

An applicant may qualify as a refugee if she can show she was a victim of persecution or has a well-founded fear of persecution upon return to her home country. *See* 8 U.S.C. § 1101(a)(42)(A); *Desir v. Ilchert*, 840 F.2d 723, 728 (9th Cir.1988). The applicant must show that her persecution was or will be on account of one of the categories protected under 8 U.S.C. § 1101(a)(42)(A). An alien who establishes

the act, we will apply the pre-amendment law.

**4.** The 1996 Act replaced 8 U.S.C. § 1105a with a new judicial review provision codified at 8 U.S.C. § 1252. Because Rivera–Moreno's deportation proceedings commenced before April 1, 1997, this court continues to exercise jurisdiction pursuant to 8 U.S.C. § 1105a. *See Sebastian–Sebastian v. INS*, 195 F.3d 504, 505 n. 2 (9th Cir.1999).

past persecution is presumed to have a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i); *Prasad v. INS*, 101 F.3d 614, 617 (9th Cir.1996). "This presumption may be overcome by evidence that since the time the persecution occurred conditions ... have changed to such an extent that [the petitioner] no longer has a well-founded fear of being persecuted if he were to return." *Prasad*, 101 F.3d at 617 (internal quotation marks omitted). However, we have emphasized that "the applicant must produce evidence from which it is reasonable to believe that the harm was motivated, at least in part, by an actual or implied protected ground." *Borja*, 175 F.3d at 736.

It is clear that persecution for failure to contribute nursing services is not a protected ground under § 1101(a)(42)(A) and Petitioner does not argue that it is. Rather, her argument is anchored on the theory that she specifically avowed to the Perquin guerrillas that she was neutral and that this statement constituted an expression of a political opinion in accordance with the teachings of this court. *See Sangha*, 103 F.3d at 1488 ("[T]he applicant must ... show that [her] opinion was articulated sufficiently for it to be the basis of ... persecution...."). Our task then is to examine the record to determine whether she demonstrated that the evidence that she was persecuted because of her political neutrality "was so compelling that no reasonable factfinder would fail to find the requisite fear of persecution." *Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812.

## IV.

 To qualify for asylum an applicant "must tie the persecution to a protected cause ... [and] show the persecutor had a protected basis ... in mind in undertaking the persecution." *Canas–Segovia v. INS*, 970 F.2d 599, 601 (9th Cir. 1992). We are persuaded that Petitioner failed to demonstrate a nexus between her expression of neutrality at Perquin in 1981–an affirmative expression of political

opinion-and the subsequent bombing of her house eight years later in San Miguel because she refused to deliver nursing services. An expression of a political opinion must not be considered *in vacuo;* it must be a direct and immediate cause of the fear of persecution, although it need not be the only cause. *See Borja*, 175 F.3d at 736.

The record contains no evidence that Petitioner expressed her political neutrality in the eight years between the incident in Perquin and the retaliatory action in 1989. Under these circumstances we cannot conclude as a matter of law that the immigration judge was unreasonable in finding that the guerrillas

> were threatening her to try to coerce her into donating her skill towards their forces. Her conduct was not an expression of any political nature, and there is no evidence to indicate that the guerrillas perceived her to be politically opposed to them but that they simply wanted her to give her skills to healing and nursing their forces.

E.R. at 22. The BIA agreed with the IJ's findings of fact: "We concur in the Immigration Judge's decision that the applicant's testimony demonstrates that the guerrillas were interested in her because they wanted her to treat wounded individuals, not because of her actual or imputed political opinion or for any of the other enumerated grounds...." E.R. at 3. Here, too, we cannot conclude that this was unreasonable as a matter of law.

The IJ's findings of fact are supported by substantial evidence. When Petitioner refused to join the guerrillas in 1981, she told them that she "didn't belong to any party," and that her "rule was to help anybody." E.R. at 34. However, she neither testified nor presented evidence to show that she was subsequently persecuted by the Perquin guerrillas in response to that statement. Her testimony is not so persuasive as to compel the conclusion that they retaliated against her because of her political neutrality. Although she was

forced to contribute her nursing skills to them for nine days until she escaped, the Perquin guerrillas did not pursue her and they did not punish her. Indeed, she had no contact with any part of the guerrilla movement until eight years later.

The San Miguel guerrillas attempted to recruit Petitioner in 1989 because they found documents that showed she was a nurse. They did not pursue her because of her neutral stance. *See* E.R. at 34–35. She did not express any political views, neutral or otherwise, to the guerrillas who attempted to recruit her in 1989. Thus, Petitioner presented no evidence to suggest the 1989 guerrillas knew she was neutral; they only knew that she refused to contribute her nursing skills to them. They bombed her home in retaliation for her refusal to deliver these services to them, not because of her political beliefs.

Because we hold that she was not persecuted on account of political opinion and does not satisfy the requirements for asylum, she necessarily failed to meet the higher standard for withholding of deportation. *See Kazlauskas,* 46 F.3d at 907.

\* \* \*

Substantial evidence supports the findings that Rivera–Moreno was not persecuted on account of political opinion.

DENIED.

MICHAEL DALY HAWKINS, Circuit Judge, specially concurring:

Quite frankly, the disposition of this appeal requires no more than an unpublished memorandum, as the result reached, with which I agree, involves a routine application of our asylum law. Judge Aldisert, however, has chosen to write an opinion that applies our law while casting doubt on its legitimacy. The opinion suggests that our court's established law of "hazardous neutrality" conflicts with the Supreme Court's decision in *Elias–Zacarias. See* Majority Opinion at 5405–06 ("We adhere to this precept notwithstanding the statement of the Supreme Court in [*Elias–*

*Zacarias* ].”). However, we have already noted that our neutrality doctrine, though questioned in *Elias–Zacarias,* was not overruled. *See Sangha v. INS,* 103 F.3d 1482, 1488 (9th Cir.1997).

The Supreme Court said in *Elias–Zacarias* that the failure to take sides in a dispute is not "ordinarily" the expression of a political opinion. *See INS v. Elias–Zacarias,* 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). But it did not state that an affirmative expression of neutrality could not amount to a political opinion especially "in an environment in which political neutrality is fraught with hazard." *Sangha,* 103 F.3d at 1488. This latter circumstance is the basis for our "hazardous neutrality" doctrine, and it is inaccurate to suggest that the doctrine conflicts with Supreme Court precedent.

The law of our circuit, therefore, remains firmly in place. Our duty while writing the opinions of this circuit is to apply that law, not to cast doubt on its viability. If an individual judge dislikes our precedent, he or she may so state in a separate opinion; it is inappropriate to express such individual concerns, however subtly, in an opinion that purports to speak for our court.

On the merits of the case, the majority opinion implies that Rivera–Moreno's nine-day forced recruitment immediately following her expression of neutrality did not constitute persecution. *See* Majority Opinion at 487 ("Although she was forced to contribute her nursing skills to them for nine days until she escaped, the Perquin guerrillas did not pursue her and they did not punish her."). We have held, however, that forced recruitment by a revolutionary army is "a deprivation of liberty" that "would amount to persecution." *Arteaga v. INS,* 836 F.2d 1227, 1231–32 (9th Cir. 1988). I thus would hold that the forced recruitment, as well as the attempted recruitment by bombing and threat eight years later, qualified as persecution.

I nevertheless concur in the result because Rivera–Moreno has failed to establish a causal connection between her expression of neutrality and her forced or attempted recruitment. In *Sangha*, 103 F.3d at 1487, we held that an applicant for asylum cannot establish that her "persecution was 'on account of' political opinion by inference, unless the inference is one that is clearly to be drawn from the facts in evidence." Rivera–Moreno has presented no evidence, direct or circumstantial, that would compel an inference that the guerrillas recruited or attempted to recruit her because of her neutrality; it is equally or more likely that they recruited her to serve their own independent purposes. I accordingly concur in the judgment.