Dioscoro GONZALEZ–MARTINEZ; Yolanda Salas De Gonzalez, Petitioners,

v.

IMMIGRATION NATURALIZATION AND SERVICE Respondents.

No. 01–71400.

INS Nos. A92–961–227, A92–961–228.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 2002.

Decided Feb. 24, 2003.

Before REINHARDT, TROTT and SILVERMAN, Circuit Judges.

### MEMORANDUM*

The Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's ("IJ") decision that Dioscoro Gonzalez–Martinez ("Gonzalez") and Yolanda Salas De Gonzalez ("Salas") (collectively "Petitioners"), husband and wife, shall be treated as arriving aliens under 8 U.S.C. § 1101(a)(13)(C)(iii) for engaging in alien-smuggling after departing the United States. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we affirm because we find substantial evidence in the record supports the BIA's holding.

### 1. Standard of Review

When the BIA conducts an independent review of the record, this court reviews the BIA's decision and not that of the IJ. *Hernandez–Montiel v. INS*, 225 F.3d 1084, 1090 (9th Cir.2000). This court reviews factual findings, such as whether an alien engaged in alien-smuggling, under the deferential "substantial evidence" standard and upholds the findings "unless the evidence compels a contrary conclusion." *Id.* (quoting *Prasad v. INS*, 101 F.3d 614, 616–17 (9th Cir.1996)). This court also reviews adverse credibility determinations under the substantial evidence standard. *Salaam v. INS*, 229 F.3d 1234, 1238 (9th Cir.2000) (citations omitted).

### 2. The BIA's Holding is Supported by Substantial Evidence in the Record

The record contains substantial evidence to support the BIA's holding. For example, the record contains Immigration Inspector Fuentes's testimony, found by the IJ to be credible, that Petitioners admitted at the port of entry they knew the children did not have proper documentation. The record also contains details of Petitioners' previous alien-smuggling activity at the same port of entry two years before the current incident, for which they were granted a waiver of deportability. Finally, the record contains Petitioners' highly implausible testimony that Salas met a relative in a Tijuana pharmacy parking lot on a trip back to the United States while Gonzalez was in a restroom–by happenstance. The relative just happened to have with him three children who needed to return to the United States and, conveniently, the children were carrying California birth certificates (two of which were fraudulent). Salas, of course, agreed to take the children to the United States without consulting her husband.

Substantial evidence in the record also supports the BIA's adverse credibility determination because the stories told by the Petitioners at the port of entry were materially inconsistent with their testimony at the removal hearings. Under the totality of these telling circumstances, whether or not Petitioners denied telling Inspector Fuentes that they were aware of the children's immigration status is patently immaterial.

PETITION DENIED.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

REINHARDT, Circuit Judge, dissenting.

Petitioners are legal permanent residents who have lived in the United States for eighteen years. They have four children, three of whom were born in this country. The majority believes, self-righteously, that they should be deported because they brought three of their young nieces and nephews into this country from Mexico, and two of the three had false papers (one child was, in fact, an American citizen). It is undisputed that all three of the children that they brought back from Mexico actually lived in the United States and had even received public benefits for a period of time. Petitioners had over twenty nieces and nephews who lived in Southern California, most of whom were American citizens and some of whom were not. Given these facts, Petitioners' claim that they did not know that their niece and nephew lacked proper papers is hardly "not credible." Nor does it show that they failed to learn the lesson administered by the INS when on one prior occasion they tried to help another relative enter the country.

Whether the majority likes it or not, we are restricted in these cases to accepting or rejecting the grounds and reasoning on which the BIA actually relied. *See SEC v. Chenery Corp.*, 332 U.S. 194, 195, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."). If the BIA had simply stated that, based on an examination of the testimony and the performance of the witnesses when testifying, it found Immigration Inspector Fuentes' testimony credible and Petitioners' testimony not credible, we might be compelled to reach the result the majority reaches.

But the BIA did not base its decision on that ground, and, accordingly, the majority is prohibited from doing so.

The BIA relied almost entirely on repeated assertions that Petitioners never denied admitting to Fuentes that they knew that two of the children had false documents. However, the record is plain that Petitioners did make such a denial. Separating Petitioners, two long-time legal permanent residents, from their American-born children is surely not the type of consequence Congress had in mind when it stiffened the immigration laws, and surely not the penalty it intended to impose for giving three nieces and nephews who had been visiting relatives in Mexico a ride back to their homes in California.

Given all of the circumstances of this case, including the drastic effect the decision will have upon a family of legal permanent residents who have been here eighteen years and have four children, including three who are American citizens, and the fact that the BIA based its decision on the total misapprehension that Salas never denied her alleged admission, when in fact she did so unequivocally, I would grant the petition and remand so that the BIA could apply the law properly. I respectfully dissent from the majority's decision, which I believe not only contravenes the applicable legal rules but, even more important, perpetrates a serious injustice. Certainly, the government would find it difficult to reconcile its actions in this case with its professed belief in family values.