

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANUCHER VOSOGHINIA, | No. 13-71798 |
| Petitioner, | Agency No. A095-193-380 |
| v. | |
| LORETTA E. LYNCH, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 12, 2016[**]
San Francisco, California

Before: NOONAN, WARDLAW, and PAEZ, Circuit Judges.

Manucher Vosoghinia, a citizen of Iran, appeals the BIA's denial of his

application for asylum and relief under the Convention Against Torture Act

("CAT") based on abuses he endured as a result of an imputed political belief. In

1959, petitioner began working for SAVAK, a governmental intelligence agency

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

that is the rough equivalent of the CIA. Petitioner worked as a Russian translator in Department 8, SAVAK's counterintelligence department.

In 1978, the Iranian revolution toppled the Shah-led government, and many high ranking government leaders, including members of SAVAK, were tortured and killed in the aftermath. The new government, led by Ayatollah Khomeini, dissolved SAVAK. In its stead, Khomeini created a new intelligence agency, albeit with a similar organizational structure, dubbed SAVAMA. Some SAVAK employees were fired, others were transferred to the Prime Minister's office, and some were offered positions with SAVAMA. The former deputy chief of SAVAK was chosen to lead SAVAMA.

1.      As an initial matter, we note that the BIA conducted its own review of the law and facts, and provided substantially different reasoning than did the IJ. However, petitioner's brief fails to challenge the substance of the BIA's opinion in any respect, and is instead almost exclusively dedicated to issues raised by the IJ. Petitioner's failure to challenge the BIA opinion constitutes forfeiture, and is therefore fatal to his case. *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259-60 (9th Cir. 1996). We nonetheless review the BIA's decision and find that it is supported by substantial evidence. Accordingly, we deny the petition for review.

2.      Because petitioner's applications for asylum were filed before May 11, 2005,

our pre-REAL ID Act test concerning adverse credibility determinations governs this appeal. *Ren v. Holder*, 648 F.3d 1079, 1084 (9th Cir. 2011). "So long as one of the identified grounds is supported by substantial evidence and goes to the heart of [petitioner's] claim of persecution, we are bound to accept the [BIA's] adverse credibility finding." *Wang v. I.N.S.*, 352 F.3d 1250, 1259 (9th Cir. 2003).

3.      The BIA seized on four inconsistencies in petitioner's testimony to support an adverse credibility finding.  These inconsistencies related to: (1) whether petitioner was the Section Chief overseeing hundreds of employees in SAVAK or merely a line level employee, (2) whether he had knowledge of secret SAVAK documents, (3) whether and to what degree he was permitted to continue working after the revolution, and (4) whether his wife sustained any physical harm during her arrest. We uphold the BIA's adverse credibility ruling because, at a minimum, the first three "identified inconsistencies go to the 'heart of [petitioner's] asylum claim.'" *Li v. Ashcroft*, 378 F.3d 959, 962 (9th Cir. 2004) (citations omitted). The first two inconsistencies relate to whether his employment with SAVAK implicates the persecution of others bar and would therefore render him ineligible for asylum.  8 U.S.C. § 1158(b)(2)(A)(i). The third inconsistency goes to his claim that the alleged economic deprivation he suffered rose to the level of persecution.

4.      Even assuming the credibility of petitioner's testimony, the alleged harms he

endured do not rise to the level of persecution. Petitioner was subjected to routine interrogation, and threatened with death if he engaged in subversive acts against the state, but was never physically harmed. We have typically required much more extreme harm to hold that the record compels a finding of past persecution. *See, e.g.*, *Chand v. INS*, 222 F.3d 1066, 1073-75 (9th Cir. 2000); *Prasad v. INS*, 101 F.3d 614, 616-17 (9th Cir. 1996); *cf. Wakkary v. Holder*, 558 F.3d 1049, 1059-60 (9th Cir. 2009). Furthermore, these facts do not give rise to the "small category of cases" where "threats are so menacing as to cause significant actual 'suffering or harm.'" *Lim v. I.N.S.*, 224 F.3d 929, 936 (9th Cir. 2000) (citations omitted); *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003); *cf. Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1314 (9th Cir. 2012).

5.     Similarly, petitioner's testimony that he was prohibited from obtaining a business license to open a language institute and barred from teaching martial arts does not constitute economic deprivation rising to the level of persecution. *Cf. Baballah v. Ashcroft*, 367 F.3d 1067 (9th Cir. 2004). Furthermore, as the BIA correctly noted, petitioner offers no explanation for how he provided financial support for himself and his family during the nine years before he was able to leave Iran by bribing a cleric.

**6.** Other than pointing to his own discredited testimony, petitioner does little to challenge the BIA's determination that he has not shown a well founded fear of future persecution or a clear probability of torture should he return to Iran.

**7.** Because petitioner has failed to show he is eligible for asylum, he has "necessarily fail[ed] to satisfy the more stringent standard for withholding of removal." *Mansour v. Ashcroft*, 390 F.3d 667, 673 (9th Cir. 2004).

**8.** Finally, petitioner's claim that his right to Due Process under the Fourteenth Amendment was violated because he was not provided with a copy of the asylum officer's notes until after the conclusion of the proceedings before the IJ is forfeited, as he failed to raise it before the BIA. Furthermore, the BIA's decision explicitly states that it does not rely on any inconsistencies gleaned from the asylum officer's Assessment to Refer.

**PETITION DENIED.**