PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

APOLINAR PERAFAN SALDARRIAGA;
LUZ VELASQUEZ CARMONA; ADRIANNA
MENESSES VELASQUEZ; MAURICIO
PERAFAN VELASQUEZ,

Petitioners,

v.

ALBERTO R. GONZALES, Attorney
General,

Respondent.

No. 04-1182

On Petition for Review of an Order of
the Board of Immigration Appeals.
(A-76-898-202; A-76-898-203; A-76-898-204; A-76-898-250)

Argued: February 1, 2005

Decided: March 29, 2005

Before WILKINSON, WILLIAMS, and TRAXLER, Circuit Judges.

Petition denied by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Williams and Judge Traxler joined.

## COUNSEL

**ARGUED:** Gary Michael Bowman, Roanoke, Virginia, for Petition-
ers. Kristin Ann Cabral, UNITED STATES DEPARTMENT OF
JUSTICE, Civil Division, Washington, D.C., for Respondent. **ON
BRIEF:** Peter D. Keisler, Assistant Attorney General, Carl H. McIn-

tyre, Jr., Senior Litigation Counsel, UNITED STATES DEPART-MENT OF JUSTICE, Office of Immigration Litigation, Civil Division, Washington, D.C., for Respondent.

---

**OPINION**

WILKINSON, Circuit Judge:

In this appeal from a final order of removal, we must determine whether the Board of Immigration Appeals ("BIA") erred in rejecting petitioner's claim for political asylum. Petitioner claims to fear reprisal by Colombian drug criminals for his association with the Drug Enforcement Agency ("DEA") and his employment by one of its informants. However, petitioner has not demonstrated how his connection to the drug trade or his collaboration with the DEA stemmed from a political position he espouses. Because such a showing is vital to an asylum claim grounded in "political opinion," 8 U.S.C. § 1101(a)(42)(A) (2000), the BIA did not err in denying petitioner's application. We therefore affirm the BIA's decision and deny the petition for review.

I.

Petitioner Apolinar Perafan-Saldarriaga is a native of Colombia, where he worked as a singer and restauranteur. After performing at an October 1995 party, Perafan met Javier Cruz, who offered petitioner a job as an escort and driver. Petitioner accepted and accompanied his boss on various trips in 1995 and early 1996.

In furtherance of the employment relationship, Cruz invited petitioner to travel to Roanoke, Virginia, and work in a restaurant that Cruz was opening there. In February 1996, shortly before departing for the United States with his wife, Perafan drove Cruz to a meeting attended by two known drug dealers. At this meeting, petitioner observed an exchange of a metal box typically used to transport drugs. He noticed the same type of box while unpacking equipment at the Roanoke restaurant later in the month. Perafan worked in the restaurant for some eight months in 1996 before Cruz fired him over a labor dispute.

In the month after petitioner lost his job, the *Roanoke Times* published articles reporting that Cruz was an informant for the DEA. This report was well-founded: the DEA had arrested Cruz and his boss Leonardo Rivera for drug-related offenses in 1991. In return for leniency in sentencing, the agency had persuaded the two men to assist in investigating the cartel that employed them. The ensuing undercover scheme was successful and yielded material information concerning the criminal activity of the cartel.

In the process of winding down the operation, the DEA had secured passage, including temporary visas, to the United States for Cruz, Perafan (whom Cruz had recently hired as a driver), and Perafan's wife. For some time after their arrival in February 1996, Cruz had continued to operate as an informant from the Roanoke restaurant. But Cruz's work was imperiled by the *Roanoke Times*'s 1996 expos) and his cover was completely blown when the Colombian press picked up the story from the Associated Press. The DEA moved Cruz to Miami for his safety and the restaurant ceased to operate.

Recently out of work, concerned about the reports in the local media which had confirmed Cruz's connection to the drug world, and eager to remain in the United States, Perafan approached the DEA agent in Roanoke who was involved with the undercover operation. Petitioner offered to cooperate with the agency in its investigation of Colombian drug trafficking and professed knowledge gained during his employment by Cruz. After several interviews, however, the agent in charge determined that Perafan possessed no useful information that was not already known by the DEA. In mid-1997, the officer informed petitioner and his wife that the agency could not assist them in immigration matters.

Cruz, meanwhile, had become concerned about the impact of his press exposure on his 1991 sentencing deal. Despite the publication of the *Roanoke Times* articles in the local Colombian media, Cruz returned to his native land in 1997. He continued his involvement in the drug trade there for some two years, before he was murdered by a bodyguard in 1999.

In April 1999, the Immigration and Naturalization Service ("INS")

issued petitioner a notice to appear.[1] The notice alleged that Perafan was a non-immigrant under 8 U.S.C. § 1101(a)(15)(b) (2000), who had remained in the United states longer than permitted, making him removable under 8 U.S.C. § 1227(a)(1)(B) (2000). Petitioner conceded his removability, but applied for asylum under 8 U.S.C. § 1158(a)(1) (2000) for himself and derivatively his wife and children. *See* 8 C.F.R. § 208.3(a) (2001).

The Attorney General has discretion to grant asylum to applicants who establish "refugee" status. 8 U.S.C. § 1158(b)(1) (2000). A "refugee" is one "who is unable or unwilling to return to" his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). Perafan alleged that his employment by Cruz, an outed DEA informant, put him at risk of reprisal by Colombian drug dealers and made him a "refugee" under this statutory definition.

The removal proceedings and the asylum petition were referred to an Immigration Judge ("IJ"). The IJ heard testimony and issued a decision on July 30, 2001. The IJ found that Perafan had successfully demonstrated a well-founded fear of reprisal against him by drug dealers in Colombia for his association with Cruz. Moreover, the retaliation would be "on account of [a] political opinion," as § 1101(a)(42)(A) requires. The judge therefore granted Perafan asylum.

A panel of the BIA reversed. A majority of the panel found implausible Perafan's allegation that he would face retaliation at the hands of drug dealers in Colombia on account of a protected statutory ground. The BIA therefore entered an order rejecting the asylum claim. Petitioner now seeks review of that order in this court.

---

[1]The agency was still known by this acronym during the administrative proceedings in this case. We therefore use the term "INS," despite the fact that the agency has since been renamed and reorganized. *See* 6 U.S.C.A. § 291 (West Supp. 2004); 8 C.F.R. § 1.1 (2005).

## II.

Circuit courts hear appeals from the BIA's final orders of removal.[2] *See* 8 U.S.C. § 1252(a)(1), (b)(2) (2000); *Huaman-Cornelio v. BIA*, 979 F.2d 995, 999 (4th Cir. 1992). When the BIA has adjudged asylum eligibility, our review of its decision is narrow. *See* 8 U.S.C. § 1252(b)(4) (2000); *Belbruno v. Ashcroft*, 362 F.3d 272, 284 (4th Cir. 2004). We determine only whether the BIA's decision is "manifestly contrary to the law and an abuse of discretion." § 1252(b)(4)(D). When the BIA has rejected an asylum claim, we therefore uphold its decision unless the petitioner has presented evidence "so compelling that no reasonable factfinder could fail to find" the elements required for asylum in petitioner's favor. *INS v. Elias-Zacarias* 502 U.S. 478, 483-84 (1992); *Belbruno*, 362 F.3d at 278; *Huaman-Cornelio*, 979 F.2d at 999. These standards reflect the BIA's expertise in the area of immigration, its status as the Attorney General's designee in deportation decisions, and the special caution we observe in matters relating to foreign relations, for which the other branches of our government bear primary responsibility. *See Huaman-Cornelio*, 979 F.2d at 999; *M.A. v. INS*, 899 F.2d 304, 313-14 (4th Cir. 1990) (en banc).

---

[2]The government contends that this court is without jurisdiction. Because the IJ decided the case on the asylum issue, he declined to address petitioner's alternative application for voluntary departure. *See* 8 U.S.C. § 1229c (2000). However, the BIA's reversal on the asylum issue revived the voluntary departure application. The BIA accordingly remanded to the IJ "to allow [petitioner] an opportunity to apply for voluntary departure." The government argues that, because this matter is pending before the IJ, federal jurisdiction, which is limited to review "of a final order of removal," is lacking. *Id.* § 1252(a)(1). Our sister circuits have already considered whether a BIA order denying relief from deportation, but remanding the case for voluntary departure proceedings or other subsidiary determinations, is immediately appealable. *See Del Pilar v. United States*, 326 F.3d 1154, 1156-57 (11th Cir. 2003) (per curiam); *Castrejon-Garcia v. INS*, 60 F.3d 1359, 1361-62 (9th Cir. 1995); *Perkovic v. INS*, 33 F.3d 615, 618-20 (6th Cir. 1994). These precedents indicate that federal jurisdiction is proper in such circumstances and, finding their reasoning persuasive, we apply this conclusion here.

### III.

Perafan alleges that the BIA erred by overturning the IJ's decision to grant him asylum. He contends the BIA should have respected the IJ's findings concerning witness credibility and credited the IJ's conclusion that petitioner's fear of reprisal in Colombia was well-founded. By failing to do so, he says, the BIA exceeded its own scope of review and impermissibly overrode factual determinations committed to the IJ. *See* 8 C.F.R. § 1003.1(d)(3) (2005). Petitioner reiterates to us the ubiquity of drug crime in Colombia and describes the violent tactics of drug dealers there. He maintains that he will be targeted because of his association with Cruz if he must return to Colombia. He asks that we reject the BIA's contrary holding.

Quite apart from the question of petitioner's apprehensions of reprisal, his asylum claim founders on more fundamental grounds. For in addition to proving a well-founded fear of persecution, a party seeking refugee status must also demonstrate that the persecution is "on account of" one of the protected grounds — "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (2000). To satisfy the statutory test, an applicant must make a two-fold showing. He must demonstrate the presence of a protected ground, and he must link the feared persecution, at least in part, to it. *See Elias-Zacarias*, 502 U.S. at 482-83; *Rivera-Moreno v. INS*, 213 F.3d 481, 486 (9th Cir. 2000).

When the protected ground is political opinion, the first showing is prototypically met by evidence of verbal or openly expressive behavior by the applicant in furtherance of a particular cause. *See, e.g.*, *Camara v. Ashcroft*, 378 F.3d 361, 364 (4th Cir. 2004) ("demonstrating with students" and participating in a "protest march" for ethnic rights demonstrates political opinion for asylum purposes). Less overtly symbolic acts may also reflect a political opinion. *See Briones v. INS*, 175 F.3d 727, 728-29 (9th Cir. 1999) (en banc) (holding that applicant's provision of material information concerning a political insurgency reflected a political opinion). But whatever behavior an applicant seeks to advance as political, it must be motivated by an ideal or conviction of sorts before it will constitute grounds for asylum. Because of this requirement, we recently reemphasized that "[f]ears of retribution over purely personal matters or

general conditions of upheaval and unrest do not constitute cognizable bases for granting asylum." *Belbruno*, 362 F.3d at 284 (quoting *Huaman-Cornelio*, 979 F.2d at 1000). Indeed, actions motivated by an employment interest, *see Adhiyappa v. INS*, 58 F.3d 261, 267 (6th Cir. 1995), or other "personal benefit," *see Perlera-Escobar v. Executive Office for Immigration*, 894 F.2d 1292, 1298 (11th Cir. 1990) (per curiam), do not merit protection as a political refugee.

In appealing his denial of asylum, petitioner reiterates the unfortunate predicament he faced when he found himself unemployed and tainted by association with Cruz, a known DEA informant. Yet Perafan never suggests that his initial acceptance of Cruz's job offer, his continued employment after it became clear that Cruz trafficked in narcotics, his decision to travel to Roanoke pursuant to this employment, and his attempt to avoid removal from the United States by cooperating with the DEA were motivated by anything other than self-regarding ends.

Petitioner has not argued that his decisions in this course of action were grounded in principle, inspired by altruism, or intended to advance a cause, as a political opinion applicant must show. And, even if we entertained the generous assumption that Perafan's cooperation with the DEA stemmed from a disapproval of the drug cartel, such a stance on his part still could not constitute a political opinion under § 1101(a)(42)(A). Indeed, to credit such disapproval as grounds for asylum would enlarge the category of political opinions to include almost any quarrel with the activities of almost any organization.

Not only would the proliferation of asylum grants under this expansive reading interfere with the other branches' primacy in foreign relations, *see M.A.*, 899 F.2d at 313-14, it would also strain the language of § 1101(a)(42)(A). The statute requires persecution to be on a discrete basis and to fall within one of the enumerated categories. This particularity demonstrates that the asylum statute was not intended as a panacea for the numerous personal altercations that invariably characterize economic and social relationships. *See Huaman-Cornelio*, 979 F.2d at 1000; *see also Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 352 (5th Cir. 2002). Even when a widespread conflict between a foreign government and an opposing non-state actor overshadows these relationships, as is the case in Colombia, a

party seeking political opinion asylum must do more than describe how this overshadowing has affected his life. To receive protection as a refugee, he must also demonstrate that he has a particular stake in the conflict and a position on how governance in that country ought to occur. *Accord Cruz-Navarro v. INS*, 232 F.3d 1024, 1030 (9th Cir. 2000) (rejecting asylum claim for applicant who "did not testify that he had particular political beliefs or opinions, much less political motives" for his actions).

For an applicant who has been forced to declare his allegiance in an expressly political struggle between an organized insurgency and government forces, demonstration of a political opinion may be more straightforward. *See Briones*, 175 F.3d at 728-29. But when, as here, the applicant has not taken sides in such manner — much less under duress — and the conflict, though ubiquitous, is not aimed at controlling the organs of state, an applicant cannot merely describe his involvement with one side or the other to establish a political opinion. *See Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1047 (10th Cir. 2004) (rejecting asylum for applicant who "fails to link his persecution to anything other than his status as a police officer" involved in civil strife); *Rivera-Moreno*, 213 F.3d at 486 ("[i]t is clear that persecution for failure to contribute nursing services [to guerrillas] is not a protected ground under § 1101(a)(42)(A)"); *Cruz-Diaz v. INS*, 86 F.3d 330, 332 (4th Cir. 1996) (per curiam) ("The guerrillas' conscription of [applicant] as a child, his fleeing from the guerrillas, and his hiding from both the guerrillas and the army . . . does not establish a political opinion on his part.") Here the absence of a political end, even from petitioner's own description of his motivations, demonstrates that his best evidence amounts to no more than a description of how the conflict in Colombia has impacted his life. Because he has not further explained how his involvement with this conflict stems from a political opinion he has adopted, he cannot be entitled to the protection of asylum.

Finally, it bears mention that, even if petitioner were found to have manifested a political opinion as the statute requires, there is no indication that the cartel members would persecute him *in response to* that manifestation. Yet such a nexus between political opinion and feared persecution, required by the statutory phrase "on account of," § 1101(a)(42)(A), is no less an important element of an asylum claim

than the applicant's display of a political opinion in the first place. *See Elias-Zacarias*, 502 U.S. at 482-83; *Huaman-Cornelio*, 979 F.2d at 1000. Indeed, to secure refugee status, "an applicant must tie the persecution to a protected cause . . . [*and*] show the persecutor had a protected basis . . . in mind in undertaking the persecution." *Rivera-Moreno*, 213 F.3d at 486 (citation omitted) (emphasis added). Thus, even if Perafan's cooperating with the DEA were somehow to be deemed sufficiently political, his protection as a refugee would not necessarily follow. For the inscrutability of the political opinion he claims implies that any persecution he faces is due to the fact of his cooperation with the government, rather than the content of any opinion motivating that cooperation. *See Adhiyappa*, 58 F.3d at 268 (rejecting asylum claim where "it was [applicant's] status as an informant, not his political opinion," that provoked persecution by political separatists).

## IV.

We appreciate Perafan's desire to remain outside Colombia and away from the foment of the drug trade. But statutes sometimes require saying no, even to a hard luck case. We are not empowered to bestow the privilege of residing in the United States in violation of the standards that Congress has announced in § 1101(a)(42)(A). Being involved in the drug wars of a foreign country with their webs and patterns of violence and recrimination is not the same thing as being persecuted on account of a political opinion. Applying the statute to the facts before us, in light of the deference we accord administrative asylum determinations, we find no error in the BIA's decision not to grant Perafan refugee status. The order of the BIA is therefore affirmed and the petition for review is

*DENIED.*