TRAXLER, Circuit Judge,
dissenting:
I would deny Lin’s petition for review of the BIA’s denial of her claims for asylum, withholding of removal, and relief under the CAT. The BIA’s eligibility determination is “conclusive unless manifestly contrary to law.” 8 U.S.C.A. § 1252(b)(4)(C) (West 2005). Because the BIA’s decision, in my opinion, is not manifestly contrary to law, I respectfully dissent.
The BIA concluded that Lin failed to carry her burden of proving “refugee” status, ie., eligibility for asylum under the INA. See 8 C.F.R. § 208.13(a) (2007); Dankam v. Gonzales, 495 F.3d 113, 115 (4th Cir.2007). The INA defines a “refugee” as an individual “who is unable or unwilling to return to” his homeland “because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C.A. § 1101(a)(42)(A) (West 2005). The statutory definition, then, permits an alien to prove refugee status by demon-strafing that she belongs in one of two categories: those who have been persecuted in the past because of one of the protected grounds and those who have a well-founded fear of future persecution based on one of the enumerated grounds. See Lin-Jian v. Gonzales, 489 F.3d 182, 187 (4th Cir.2007); 8 C.F.R. § 208.13(b). The BIA determined that Lin failed to prove either that she suffered past persecution on account of a protected ground or that she has a well-founded fear of such persecution in the future.
A.
In determining that Lin failed to establish past persecution, the BIA specifically concluded that an IUD insertion procedure, because of its reversible nature, does not qualify as persecution: “Although the record indicates the respondent was required to undergo IUD insertion, the temporary nature of the IUD insertion removes it from the defined and permanent actions described as persecutory within the [INA’s] definition of ‘refugee.’ ” J.A. 2. The BIA’s order does not specifically reference the “continued usage” aspect of Lin’s claim; rather, the BIA rejected the narrower claim that the insertion of an IUD alone rises to the level of “persecution.” Such a conclusion is certainly consistent with this court’s decision in Li v. Gonzales, 405 F.3d 171, 179 (4th Cir.2005).
As Chief Judge Williams rightly points out, however, Li left open the possibility that a compulsory IUD insertion coupled with mandatory continuous usage might be *698 severe enough to constitute persecution under the INA. See id. Although there is little if anything in the record to suggest that the required regular checkups with family planning officials were any more than an afterthought to Lin’s asylum claim, Lin’s brief to the BIA — taking its cue from Li — made clear that her past persecution claim included a “continued usage” component.*
Nevertheless, even if the alleged acts qualified as persecution under the INA, I would still conclude that the BIA’s decision is not manifestly contrary to the law because of Lin’s failure to offer any evidence establishing a nexus between the IUD insertion and her own resistance to China’s population control policies.
To establish eligibility for asylum based on past persecution, an alien must demonstrate that he suffered persecution on account of a protected ground. See 8 U.S.C.A. § 1101(a)(42)(A). Not every “morally reprehensible” act to which an alien is subject entitles him to “protection under the INA unless it occurs on account of one of the protected grounds spelled out therein.” Abdel-Rahman v. Gonzales, 493 F.3d 444, 453 (4th Cir.2007) (internal quotation marks omitted). The protection afforded under the INA does not extend to shield an alien from all indignities that are an unfortunate part of everyday life in the alien’s homeland. Cf. Saldarriaga v. Gonzales, 402 F.3d 461, 467 (4th Cir.2005) (“The [INA] requires persecution to be on a discrete basis and to fall within one of the enumerated categories. This particularity demonstrates that the asylum statute was not intended as a panacea for the numerous personal altercations that invariably characterize economic and social relationships.”).
Lin seeks political asylum under the 1996 amendment to the definition of “refugee”: “[A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion.... ” 8 U.S.C.A. § 1101(a)(42)(B). Lin does not claim to have undergone a forced abortion or involuntary sterilization, both of which qualify as past persecution per se, nor does Lin allege that she was persecuted for failing or refusing to submit to these procedures. Therefore, in order to establish past persecution, Lin must demonstrate that she was persecuted “for other resistance” to China’s population control policy. 8 U.S.C.A. § 1101(a)(42)(B) (emphasis added). The statutory text requires that the persecution alleged by Lin must have been on account of Lin’s resistance to China’s population control program. See Li v. Ashcroft, 356 F.3d 1153, 1160 (9th Cir.2004) (en banc) (“Congress determined that those who resist coercive population control policies should enjoy protection,” making the question “whether [the asylum applicant’s] resistance motivated the government officials to harm her through the forced pregnancy examination.”).
Lin’s past persecution claim is premised on the insertion of an IUD following the birth of her first child and the ensuing mandatory medical checkups with family planning officials to ensure that Lin did not remove the device. In her asylum application, Lin claimed that she was *699 “forced to have an IUD inserted” shortly after the birth of her first child, that she “was required to attend ... IUD checkups regularly,” and that “[t]he cadres told us that we could have a second child five years later.” J.A. 406. Lin did not suggest that government officials physically coerced her into undergoing the IUD procedure, that she resisted, or that she was in violation of Chinese family planning law at the time. Similarly, at the asylum hearing, Lin testified that the insertion of the IUD was contrary to her wishes, but she did not indicate that she resisted or objected to the procedure or that, prior to receiving the IUD, she had violated or opposed or resisted China’s population control laws. In fact, Lin’s documentary evidence suggests that her IUD insertion three months after the birth of her first child was consistent with routine protocol followed by Fujian Province family planning cadre. Fuzhou City’s rules for enforcing the Fujian Province Family Planning Regulations direct that in agricultural households, IUD insertion is mandatory “after giving birth to one child.” J.A. 181. Lin submitted a Department of Justice study on family planning in China indicating that “[a]fter having her first child, within three to six months a woman is required to have an intra-uterine device (IUD) inserted.” J.A. 283. None of the documentation offered by Lin suggests that IUD insertion is linked to resistance or opposition to China’s population control program. And, Lin did not suggest that the birth of her first child was “out-of-plan” or in any way violated family planning regulations, or that, in receiving the IUD, Lin was treated differently than other first-time birth mothers who undergo IUD insertion not because of their resistance to policy but simply because it is standard operating procedure.
Although the BIA addressed whether Lin offered sufficient proof to establish past persecution, it did not specifically address whether Lin established that the alleged persecution was “for other resistance to a coercive population control program.” 8 U.S.C.A. § 1101 (a) (42) (B). When the BIA has not considered a given issue, “the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.” INS v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam) (internal quotation marks omitted). Generally, “[a] court of appeals is not ... empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.” Id. (internal quotation marks omitted); cf. Li, 405 F.3d at 178 (“[B]e-cause neither the Board nor the IJ addressed the issue of whether the mistreatment Li alleges was imposed ‘for other resistance to a coercive population control program,’ we would be required to remand to the Board for an initial determination on that issue if it were necessary to dispose of this case.”).
We recently considered the “rare circumstances” exception to the ordinary remand rule in Hussain v. Gonzales, 477 F.3d 153, 157-58 (4th Cir.2007), concluding that remand to the BIA was not required where it was clear from the record that petitioner would be unable to establish a prima facie case that he was eligible for adjustment of status. Lin is in a similar position here. Not only is there no evidence to suggest that her IUD insertion resulted from her resistance, but the evidence suggests quite the opposite — that Lin’s IUD insertion was standard operating procedure. Because Lin failed to produce any evidence linking her IUD procedure to “other resistance,” she failed, in my view, to establish a prima facie case. Under these circumstances, remand for *700 Lin to take another shot at her proof is neither necessary nor appropriate.
B.
I would also deny Lin’s petition for review of the BIA’s conclusion that she failed to establish a well-founded fear of future persecution. The BIA’s rejection of Lin’s claim of a well-founded fear of future persecution is grounded largely on findings of fact, to which we accord substantial deference. The BIA’s findings of fact “are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C.A. § 1252(b)(4)(B). Having reviewed the record, I would conclude that the BIA’s decision is supported by substantial evidence and I am not able to say that the BIA’s conclusions are manifestly contrary to law.
C.
Finally, I would also deny Lin’s petition for review of her claim for relief under the CAT. To be eligible for relief under the CAT, Lin must demonstrate “that it is more likely than not that ... she would be tortured if removed to the proposed country of removal.” 8 C.F.R. § 208.16(e)(2). Although the BIA failed to separate Lin’s asylum and CAT claims, which are analytically distinct and require separate analy-ses, see Camara v. Ashcroft, 378 F.3d 361, 367-72 (4th Cir.2004), Lin failed to submit evidence suggesting it is more likely than not that she would be tortured upon returning to China. Accordingly, I cannot find the BIA’s decision manifestly contrary to law.
Based on the foregoing reasons, I respectfully dissent.

 In the affidavit accompanying her application for asylum, Lin suggests that she removed the IUD secretly because she and her husband "did not want to wait” the five years dictated by the government before having a second child and they "were afraid the policy would change for the worse” in the interim. J.A. 406.