__UNPUBLISHED__

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1323**

DIANA BESSEM AGBORNCHONG,

    Petitioner,

  v.

ERIC H. HOLDER, JR., Attorney General,

    Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 23, 2010    Decided: June 17, 2010

Before NIEMEYER and SHEDD, Circuit Judges, and James A. BEATY, Jr., Chief United States District Judge for the Middle District of North Carolina, sitting by designation.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** Joshua A. Moses, JOSHUA MOSES & ASSOCIATES, Silver Spring, Maryland, for Petitioner. Rebecca Ariel Hoffberg, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Civil Division, William C. Peachey, Assistant Director, Paul T. Cygnarowicz, Trial Attorney, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Diana Bessem Agbornchong ("Petitioner"), an alien and native of Cameroon, has filed a petition for review seeking review of an order by the Board of Immigration Appeals ("Board") dismissing her appeal from the Immigration Judge's ("IJ") order that denied her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Petitioner challenges the IJ's determination, which was affirmed by the Board, that she failed to establish that the government of Cameroon would impute political opinions to her that would result in her persecution. For the reasons that follow, the determinations of the IJ and the Board are affirmed, and the petition for review is denied.

## I.

Petitioner first entered the United States on November 10, 2004 as a visitor, being authorized to remain in the country until May 10, 2005. However, Petitioner did not leave the country by this date, and on November 9, 2005, she timely filed an application for asylum, as well as for withholding of removal and CAT protection. On August 7, 2007, Petitioner appeared before the IJ for a hearing on her applications. Petitioner's application for asylum, which lays out the basis of her claims,

3

states that while in Cameroon, she began working in 1985 as a housekeeper and nanny for Captain Njang ("Njang"). Njang was a former military captain and founding member of the Southern Cameroons National Council ("SCNC"), a political organization of English-speaking Cameroonians advocating secession. The SCNC regularly held meetings at Njang's home, where Petitioner received guests and prepared food for SCNC members. At no point, however, was Petitioner a member of the SCNC, and Petitioner freely admits that she was never familiar with the group's political activities or viewpoints. Nonetheless, Njang would routinely present Petitioner with documents after each SCNC meeting to store for safekeeping. Petitioner claims that although she had no knowledge regarding these documents' contents, she was questioned by police on one occasion about the documents during her employ with Njang, but she was never arrested.

Following Njang's death in 2000, Petitioner maintains that she relinquished a briefcase containing various documents and personal effects to Njang's relatives and went into hiding. During this period, Petitioner began working for a non-profit organization run by Njang's sister, which was closed by the Cameroonian government in October 2003 after the government discovered that SCNC meetings were being held at the

4

organization's facility.  Thereafter, Petitioner claims that she hid in a local village while she was obtaining travel documents. In January 2004, Petitioner maintains that government police came to the village, searching for her in relation to Njang's documents, but that Petitioner was able to evade the authorities at that time.  Petitioner subsequently obtained an official Cameroonian passport and a visa from the U.S. Embassy, and with the aid of Njang's former girlfriend, Petitioner arrived at the airport and boarded a plane for the United States on November 10, 2004.

At the hearing before the IJ, Petitioner's testimony was for the most part consistent with the account laid out in her asylum application, and the basic details of Petitioner's account were likewise corroborated by several witnesses and affidavits. Petitioner testified that she fears being arrested if returned to the country because of her connection with Njang and the SCNC.  She also presented the testimony of Njang's brother that a warrant is pending for Petitioner's arrest in Cameroon; however, no copy of an arrest warrant was ever presented at the hearing.

The IJ denied all of Petitioner's claims, finding that with regard to the asylum claim, Petitioner had not established a nexus between her fear of future persecution and a protected ground, namely political opinion.  The IJ's decision was

subsequently upheld by the Board in an order dated February 27, 2009. Petitioner filed a timely petition for review of the denial of her claims for asylum and withholding of removal.[1]

## II.

### A.

"The scope of our review of a final order of removal denying asylum is narrow." Dankam v. Gonzales, 495 F.3d 113, 119 (4th Cir. 2007). When asylum is denied on the grounds that the evidentiary burden for establishing eligibility has not been met, "we review for substantial evidence and must affirm a determination of statutory ineligibility by the [Board] unless the evidence presented was so compelling that no reasonable factfinder could fail to find eligibility for asylum." Id. (internal quotation marks omitted). Here, as in all cases where the Board affirms and supplements an order by the IJ, the factual findings and reasoning contained in both decisions are subject to judicial review. Niang v. Gonzales, 492 F.3d 505,

---

[1] Petitioner also initially filed a petition for protection under the Convention Against Torture ("CAT") which was denied by both the IJ and the Board. In her petition for review, however, Petitioner did not challenge the denial of CAT relief, and therefore, this claim is not preserved for review. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999); Canady v. Crestar Mortgage Corp., 109 F.3d 969, 973-74 (4th Cir. 1997).

511 n.8 (4th Cir. 2007) (citing Haoua v. Gonzales, 472 F.3d 227, 230 (4th Cir. 2007)). Accordingly, "the IJ's or the [Board's] factual findings are 'conclusive unless the evidence before the [Board] was such that any reasonable adjudicator would have been compelled to conclude to the contrary.'" Id. (quoting Haoua, 472 F.3d at 231).

B.

Refugees may be granted asylum by the United States Attorney General. 8 U.S.C. § 1158(b). Applicants for asylum have the burden of establishing either past persecution or a well-founded fear of future persecution based upon the protected grounds of race, religion, nationality, membership in a particular social group, or political opinion. See Elias-Zacarias, 502 U.S. 478, 481 (1992); Ngarurih v. Ashcroft, 371 F.3d 182, 187 (4th Cir. 2004); 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b). The "well-founded fear" standard is comprised of both an objective and subjective element. The objective component requires an applicant to show specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. Gandziami-Mickhou v. Gonzales, 445 F.3d 351, 353 (4th Cir. 2006). The subjective component, on the other hand, requires an applicant to submit credible testimony demonstrating a genuine fear of persecution

7

with some basis in reality and validated with specific facts, not merely an irrational fear of persecution. Li v. Gonzales, 405 F.3d 171, 176 (4th Cir. 2005).

In addition, in order to qualify for asylum, an applicant must establish a nexus between the feared persecution and the protected ground. See Elias-Zacarias, 502 U.S. at 482-83; 8 U.S.C. § 1101(a)(42)(A). In order to satisfy this nexus element, "an applicant must tie the persecution to a protected cause . . . [and] show the persecutor had a protected basis . . . in mind in undertaking the persecution." Saldarriaga v. Gonzales, 402 F.3d 461, 468 (4th Cir. 2005) (quoting Rivera-Moreno v. INS, 213 F.3d 481, 486 (9th Cir. 2000)). Here, Petitioner does not allege persecution on the grounds of race, religion, nationality, or membership in a particular social group. Instead, she alleges a fear of future persecution based upon political opinion. With respect to a petitioner's fear of persecution based upon political opinion, the political opinion may be one actually held by the petitioner or one that is imputed to her by persecutors. See 8 U.S.C. § 1101(a)(42)(A); Abdel-Rahman v. Gonzales, 493 F.3d 444, 450-51 (4th Cir. 2007). In order to succeed on an asylum claim based upon an imputed political opinion, a petitioner bears the burden of establishing "that [her] persecutors actually imputed a political opinion to

8

[her]." Abdel-Rahman, 493 F.3d at 450-51 (emphasis added)(quoting Sangha v. INS, 103 F.3d 1482, 1489 (9th Cir. 1997)).

III.

A.

After hearing oral arguments and reviewing the administrative record, the IJ's decision, and the Board's order, we conclude that the record does not compel the reversal of the finding that Petitioner is not eligible for asylum. Substantial evidence supports the determination that Petitioner failed to establish a nexus between her fear of future persecution and the political opinion she alleges will be imputed to her.

In this regard, while Petitioner may have demonstrated through credible testimony[2] that she holds a genuine fear of persecution, she failed to establish a nexus between her feared persecution and a protected ground, that is, that she would be persecuted "on account of" a political opinion actually imputed to her. 8 U.S.C. § 1101(a)(42)(A); see Elias-Zacarias, 502 U.S. at 482-83; Abdel-Rahman, 493 F.3d at 450-51. Here, the IJ

---

[2] Pursuant to the REAL ID Act of 2005, because no adverse credibility determination was explicitly made by the IJ, Petitioner enjoys a rebuttable presumption of credibility on appeal. 8 U.S.C. § 1158(b)(1)(B)(iii).

reasonably concluded that following the death of Njang, the government's reasons for questioning Petitioner about Njang's documents were "but incidental or tangentially related to" Njang's political activity with the SCNC. (J.A. 363-64).

Indeed, substantial evidence in the record supports the conclusion that although Petitioner may have been questioned about the location of Njang's documents on one occasion, the government did not actually impute Njang's political opinions to Petitioner. Petitioner was never a member of the SCNC, nor was she even aware of the political viewpoints or activities advocated by the group or Njang. At all relevant times, Petitioner was illiterate and served Njang only in a housekeeping role. In addition, Petitioner was only questioned by the police on one occasion, despite the fact that she worked for Njang for a period of fifteen years——and at no point did the police question her about the contents of Njang's documents, only their location.

Finally, pursuant to the REAL ID Act of 2005, "[w]here the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1229a(c)(4)(B). Here, the IJ

concluded that certain evidence not produced at the hearing, including a copy of the purported arrest warrant facing Petitioner, was nonetheless reasonably available corroborative evidence. In denying Petitioner's application for asylum, the Board relied upon the IJ's finding that this corroborative evidence was reasonably available, despite Petitioner's rebuttable presumption of credibility. In addition, the REAL ID Act requires that "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4)(D). In this regard, Petitioner has not accounted for her failure to produce this corroborative evidence, and we do not find that the record compels the conclusion that such evidence is unavailable.

Accordingly, after undertaking an "extremely deferential" review of the denial of Petitioner's application for asylum, we conclude that the determination made by the IJ and the Board are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and the record does not compel reversal thereof. Elias-Zacarias, 502 U.S. at 481. We

therefore deny the petition for review with regard to Petitioner's asylum claim.

B.

With regard to Petitioner's claim for withholding of removal, because Petitioner does not qualify for asylum, she is necessarily ineligible for withholding of removal. See Ngarurih, 371 F.3d at 187 n.7; Camara v. Ashcroft, 378 F.3d 361, 367 (4th Cir. 2004) ("Because the burden of proof for withholding of removal is higher than for asylum——even though the facts that must be proved are the same——an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal[.]"). Therefore, we also deny the petition for review with regard to Petitioner's withholding of removal claim.

IV.

For the foregoing reasons, the petition for review is

DENIED.

12