# Matter of D-G-E-A- & N-G-G-E-, Respondents

*Decided April 21, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Disapproval of or opposition to criminal gangs is not sufficient to establish a political opinion under the Immigration and Nationality Act.

(2) To establish a political opinion under the INA, an alien must have an actual or imputed belief or conviction regarding a discrete cause that is tied to a government of a country, including a de facto government.

FOR THE RESPONDENTS: Monica N. Ganjoo, Esquire, Miami, Florida

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; GEMOETS and CHABAN, Appellate Immigration Judges.

MALPHRUS, Chief Appellate Immigration Judge:

The respondents, who are natives and citizens of El Salvador,[1] appeal from an Immigration Judge's October 16, 2019, decision denying their applications for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture ("CAT").[2] Sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2024). We will dismiss the appeal.

The respondent claims she was persecuted by her husband and fears that his sister, whom she identifies as a gang member, will harm her upon her return to El Salvador. The respondent bases her eligibility for asylum and

---

[1] The respondents are a mother and her minor child. The mother is the lead respondent, and all references to a singular respondent are to her. The minor respondent is a derivative applicant on the lead respondent's asylum application and also submitted a separate application based on the same facts as her mother's claim. The Board grants the respondents' motion to accept a brief that exceeds the page limit. *See* EOIR Policy Manual, Part II: Board Practice Manual § 3.6(b) (March 18, 2026).

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).

withholding of removal on a political opinion described as her "opposition to the Maras and their activities as the de facto government of El Salvador," as well as her membership in certain gender- and family-based proposed social groups. The Immigration Judge found that the record evidence did not reflect that the respondents were politically active or made any statements, political or otherwise, against the Mara 18 gang or its activities.

The respondents argue on appeal that the Immigration Judge's conception of what constitutes a political opinion is too narrow because it relies on outdated notions of what constitutes political activity. Specifically the respondent argues that she holds the opinion that gangs, gang activities, and corrupt government actors who work with them are morally wrong, an opinion rooted in her Christian faith. She contends that she manifested such a political opinion by avoiding gang activity and specifically resisting and avoiding gang ties. She also contends that because she considers gangs in El Salvador to be political actors, resistance to gang activity is an overtly political act.

# I. POLITICAL OPINION

## A. Definition of "political opinion"

An asylum applicant must establish that he or she is a refugee within the meaning of section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42) (2024). INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). Section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42), defines a "refugee" as any person who, inter alia, has suffered "persecution or [has] a well-founded fear of persecution on account of" one of the following five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. Further, section 208(b)(1)(B)(i) of the INA, 8 U.S.C. § 1158(b)(1)(B)(i), requires an asylum applicant to establish that one of these five protected grounds was or will be one central reason for the applicant's persecution. The precise meaning of what constitutes a "political opinion" is not further defined in the INA.

The current definition of refugee was added by the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 ("Refugee Act"). When the Refugee Act was enacted, Webster's New Collegiate Dictionary (1979) defined "political" as "of or relating to government, a government, or the conduct of government," "of, relating to, or concerned with the making as distinguished from the administration of governmental policy," and "of, relating to, or involving politics and esp. party politics." Similarly, Black's Law Dictionary at the time defined "political" as "[p]ertaining or relating to the policy or the

administration of government, state or national" and "[p]ertaining to, or incidental to, the exercise of the functions vested in those charged with the conduct of government."  Black's Law Dictionary (5th ed. 1979); *see also Chang v. INS*, 119 F.3d 1055, 1062, 1063 n.5 (3d Cir. 1997) (citing the definition of "political" in Black's Law Dictionary to support the court's determination that an asylum applicant "was motivated by his 'political opinion'" where he violated his country's security laws based on his disagreement with the government's treatment of defectors and "took a personal risk to defy the government").

In *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992), the Supreme Court looked to the ordinary meaning of the phrase "persecution on account of . . . political opinion" in section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42), and determined that the persecution must be on account of the victim's political opinion, not the persecutor's.  "[T]he mere existence of a generalized 'political' motive underlying the [actions of the persecutor] is inadequate to establish (and, indeed, goes far to refute) the proposition that [an alien] fears persecution *on account of* political opinion, as 101(a)(42) requires."  *Id.* (emphasis in original).  The Court determined that the asylum applicant in that case did not show a political motive on his part, citing the applicant's testimony that his refusal to join the guerrillas was due to his fear that the government would retaliate against him and his family if he joined the guerrillas.  *Id.*  The motivation of the guerillas to expand their membership for political reasons was independent of the respondent's views.  *See id.*  The Court further indicated that "political opinion" is distinguishable from "such quite different concepts as indifference, indecisiveness, and risk averseness."  *Id.* at 483.

The legislative history of the Refugee Act shows that Congress sought to change the refugee definition, in part, to conform to the definition of a refugee in the 1951 United Nations Convention Relating to the Status of Refugees, *adopted* July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954) ("Convention"), and the 1967 United Nations Protocol Relating to the Status of Refugees, *opened for signature* Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267 (entered into force Oct. 4, 1967; for the United States Nov. 1, 1968) ("Protocol").  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 436–37 (1987) ("[T]here were also many statements indicating Congress' intent that the new statutory definition of 'refugee' be interpreted in conformance with the Protocol's definition."); *Negusie v. Holder*, 555 U.S. 511, 520 (2009) (observing that one of the primary purposes of passing the Refugee Act was to "implement the principles agreed to" in the Protocol).

The Convention and Protocol do not define the term "political opinion." The United Nations High Commissioner for Refugees' Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and 1967 Protocol Relating to the Status of Refugees ("U.N. Handbook"), as issued in 1979, is a useful interpretive aid on this issue.[3] In particular, the U.N. Handbook specifies that an applicant must show a fear of persecution for holding "political opinions different from those of the Government." U.N. Handbook (1979) at ¶ 80. Further, the U.N. Handbook provides that fear of persecution based on a political opinion presupposes: 1) "that the applicant holds opinions not tolerated by the authorities, which are critical of their policies or methods," and 2) "that such opinions have come to the notice of the authorities or are attributed by them to the applicant." *Id*.

Thus, applying the ordinary meaning of the term "political opinion," we conclude that a "political opinion" under the INA requires an expression, either through active or indirect conduct, of a belief or conviction regarding a discrete cause which is related to a government. This definition is consistent with the Board's decision in *Matter of S-P-*, 21 I&N Dec. 486, 493–94 (BIA 1996), where the Board tied political opinion to an expression of beliefs or convictions related to the government. The Board concluded that whether the applicant, a suspected Tamil Tiger, was persecuted on account of political opinion required a determination of whether the evidence showed that "those who harmed the applicant were in part motivated by an assumption that his political views were antithetical to those of the government." *Id*. at 489, 494.

Many circuit court cases have also tied political opinion to expressions of beliefs or convictions regarding a discrete cause which is related to a government. For example, in the context of complaints against corruption by a government agent, the United States Courts of Appeals for the Second and Ninth Circuits have held that whistleblowing can constitute a political opinion when the alien's actions were "directed toward a governing institution." *Castro v. Holder*, 597 F.3d 93, 101 (2d Cir. 2010) (quoting *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 548 (2d Cir. 2005)); *see also Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir. 2000). "[O]pposition to endemic corruption . . . may have a political dimension when it transcends mere self-protection and represents a challenge to the legitimacy or authority of the

---

[3] Guidance issued by the United Nations High Commissioner for Refugees "may be a useful interpretive aid, but it is not binding on the Attorney General, the [Board], or United States courts." *Matter of Negusie*, 28 I&N Dec. 120, 140 (A.G. 2020) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 427 (1999)).

ruling regime." *Castro*, 597 F.3d at 100–01 (quoting *Yueqing Zhang*, 426 F.3d at 547–48); *see also Yu v. Holder*, 693 F.3d 294, 298 (2d Cir. 2012) ("Where opposition to corruption transcends self-protection and represents a challenge to state-sanctioned modes of official behavior, a[n] [alien] may be eligible for asylum."). "When the alleged corruption is inextricably intertwined with governmental operation, the exposure and prosecution of such an abuse of public trust is necessarily political." *Grava*, 205 F.3d at 1181. However, because "[p]urely personal retribution" would not constitute persecution on account of a political opinion, "retaliation completely untethered to a *governmental system* does not afford a basis for asylum." *Id.* at 1181 n.3 (emphasis added).

The respondent's claimed political opinion is based on her opposition to the Maras. Circuit courts have generally concluded that opposition to nongovernmental groups does not in itself reflect a political opinion. *See, e.g.*, *Santos-Lemus v. Mukasey*, 542 F.3d 738, 747 (9th Cir. 2008), (upholding the Board's determination that "a general aversion to gangs does not constitute a political opinion"), *abrogated on other grounds, Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc). In *Saldarriaga v. Gonzales*, 402 F.3d 461, 466 (4th Cir. 2005), the Fourth Circuit found that an applicant's disapproval of a drug cartel did not constitute a political opinion despite his connection to the Drug Enforcement Agency. "[C]redit[ing] such disapproval as grounds for asylum would enlarge the category of political opinions to include almost any quarrel with the activities of almost any organization." *Id.* at 467.

In *Zelaya-Moreno v. Wilkinson*, 989 F.3d 190, 200–03 (2d Cir. 2021), the Second Circuit found that an asylum applicant who told gang members that "gangs are bad for my town and country" did not establish a political opinion. The court held that a political opinion is one that involves "some support for or disagreement with the belief system, policies, or practices of a government and its instrumentalities; an entity that seeks to directly influence laws, regulations, or policy; an organization that aims to overthrow the government; or a group that plays some other similar role in society." *Id.* at 199–200 (citations omitted); *accord Chavez v. Garland*, 51 F.4th 424, 430 (1st Cir. 2022).

However, some circuit court cases have discussed political opinion asylum issues in ways that are at odds with our understanding of a political opinion as an expression of a belief or conviction regarding a discrete cause which is related to a government. For example, in *Aguilar v. Garland*, 60 F.4th 401, 405–06 (8th Cir. 2023), the Eighth Circuit reiterated a prior ruling that evidence of a gang's political mindedness may be sufficient to

demonstrate resistance to the gang as a political opinion, although it also emphasized that evidence of a gang's underlying, generalized political motives would be insufficient to establish resistance as an anti-gang political opinion. We do not consider a gang's general political mindedness to be sufficient to support a political opinion claim under the INA.

In *Hernandez-Chacon v. Barr*, 948 F.3d 94, 104 (2d Cir. 2020), the Second Circuit remanded the asylum applicant's case to the Board for further findings on her political opinion claim, in part, because her "refusal to acquiesce [to gang violence] was – or could be seen as – an expression of political opinion, given the political context of gang violence and the treatment of women in El Salvador." The court found that the alien's "resistance arguably took on a political dimension by transcending mere self-protection to also constitute a challenge to the authority of the MS gang." *Id*. While the alien may have been viewed as challenging the gang's authority, we do not believe that the facts of that case sufficiently tie the alien's actions to a belief or conviction that is related to the ruling government or demonstrate that the gang was acting in a governmental capacity.

Similarly, in *Alvarez Lagos v. Barr*, 927 F.3d 236, 251, 254–55 (4th Cir. 2019), the Fourth Circuit remanded an asylum applicant's case to the Board to consider whether she established that a gang imputed a political opinion to her where she refused to comply with the gang's demands, was threatened with violence, including sexual violence, and fled the country. The court noted that the evidence presented by the alien showed that her neighborhood was "effectively controlled" by the gang where it "monitors who enters and exits the neighborhood, controls when residents can worship, collects taxes from residents, and kills individuals who disobey its commands." *Id.* at 244. The court also observed that the alien presented expert evidence that the gang would view her refusal to comply with the gang's demands and her departure from Honduras as "a direct challenge to its efforts to establish and maintain political domination within Honduras." *Id.* at 251.

We disagree that such evidence would be sufficient to support a political opinion claim because we construe the term "political opinion" as requiring a connection to a government or a de facto government. Therefore, we do not agree that opposition to a gang's activities that influence a neighborhood would be sufficient to establish a political opinion claim that relates to a gang purportedly acting as a de facto government.

We conclude that a political opinion under the INA must be tethered to an expression of a belief or conviction regarding a discrete cause related to the government of a country, or, as further discussed below, a de facto

government.[4]  We recognize that a political opinion may "encompass[] more than electoral politics or formal political ideology or action."  *Ahmed v. Keisler*, 504 F.3d 1183, 1192 (9th Cir. 2007).  Nonetheless, because political opinion is one tethered to an expression of a belief or conviction related to the government, disapproval of or opposition to criminal gangs is not sufficient to establish a political opinion under the INA.

### B.  De Facto Government

A "de facto government" is a "government that has taken over the regular government and exercises sovereignty over a country."   Black's Law Dictionary (12th ed. 2024).  A de facto government is "in the full and actual exercise of sovereignty over a territory and people large enough for a nation." *Kadic v. Karadzic*, 70 F.3d 232, 244 (2d Cir. 1995) (quoting *Ford v. Surget*, 97 U.S. (7 Otto) 594, 620, 24 L. Ed. 1018 (1878) (Clifford, J., concurring)). The determinative factor in deciding whether a de facto government exists is whether the relevant group has exercised sovereignty over the territory and the people.  *See id.* at 244–45.  When an alien establishes that a de facto government controls a country, an alien can establish a basis for a political opinion claim if the alien expresses a belief or conviction in furtherance of a cause related to the de facto government.

The respondent asserted her eligibility for asylum and withholding of removal based on a political opinion that she described as "opposition to the Maras and their activities as the de facto government of El Salvador" or as "anti-gang."  Assuming the respondent is opposed to gangs, she has not shown that she expressed a political opinion related to the ruling government of El Salvador or that the gangs in El Salvador, independently or collectively, have established a de facto governance to which she is opposed.  The country conditions evidence in the record does not show that the gangs are acting in the position of the ruling authority or government in El Salvador nor demonstrate a level of influence that shows control or governance.  Although the gangs in El Salvador may influence some communities, small and large,

---

[4]   Fears related to general conditions of upheaval or civil disturbances are not considered a basis for a "political opinion" under the INA.  *See Saldarriaga*, 402 F.3d at 466 (emphasizing that "fears of retribution over purely personal matters or general conditions of upheaval and unrest do not constitute cognizable bases for granting asylum") (quoting *Belbruno v. Ashcroft*, 362 F.3d 272, 284 (4th Cir. 2004)); *Campos-Guardado v. INS*, 809 F.2d 285, 290 (5th Cir. 1987) (finding with regard to the passage of the Refugee Act that "we can infer that Congress did not intend to confer eligibility for asylum on all persons who suffer harm from civil disturbances—conditions that necessarily have political implications").

or may interfere with functions of the official government through violence and criminal activity, the record evidence does not establish that the gangs exercise actual sovereignty or control where they operate.[5]

The respondents refer to examples of general gang conduct in El Salvador to argue that the gangs' operations impact social and political activities. This evidence does not show that gangs exert control of governance or policies. The respondent's examples demonstrate the intimidation tactics of gangs to further their activities, but they do not reflect that gangs maintain governmental authority. Because the respondent has not established gangs are a de facto government in El Salvador, the respondent's opposition or resistance to gang activity cannot be said to be inherently political.

In summary, to establish a political opinion under the INA, an alien must have an actual or imputed belief or conviction regarding a discrete cause that is tied to a government of a country, including a de facto government. The respondent has not established her political opinion claim under the INA because her opposition to the gangs in El Salvador is not tied to the Salvadoran government and the gangs she fears are not a de facto government in El Salvador.

## II. Particular Social Groups

The respondent also asserted her eligibility for asylum and withholding of removal based on her membership in the following particular social groups: (1) "women in El Salvador;" (2) "Salvadoran women unable to leave a relationship due to society and social pressures;" (3) "Salvadoran women unable to leave a relationship due to low social status due to gender;" (4) "Salvadoran women in a domestic relationship with a 'machista' male;" (5) Salvadoran women viewed as property;" (6) "non-biologically related family members of [her husband];" (7) "nuclear family members of [her husband];" and (8) "extended family members of [her husband's sister]."[6]

---

[5] Although on appeal the respondent references various articles in support of her argument that the gangs are the de facto government of El Salvador, the articles are not part of the record, nor did the respondents provide the articles for the Board's consideration. Unsupported assertions by counsel are not facts, and the Board only reviews the record as it was before the Immigration Judge. *See INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) (declining to give weight to counsel's unsupported assertions in an appellate brief); *Matter of Fedorenko*, 19 I&N Dec. 57, 73–74 (BIA 1984) (noting that the Board will not accept new evidence on appeal).

[6] The respondent has waived any argument regarding whether "Salvadoran witnesses believed to have taken concrete steps to oppose Barrio 18" is a cognizable particular social

During the pendency of the respondent's appeal, the Board and the Attorney General issued decisions that foreclose her particular social group arguments. "Women in El Salvador" fails as a cognizable particular social group pursuant to *Matter of K-E-S-G-*, 29 I&N Dec. 145 (BIA 2025). In that case, the Board held that "a particular social group defined by the alien's sex or sex and nationality, standing alone, is overbroad and insufficiently particular to be cognizable." *Id*. at 151. The Board also found the group "Salvadoran women viewed as property" to lack particularity. *Id*. at 154–55.

The respondent's family- and gender-based groups also fall within the scope of *Matter of R-E-R-M- & J-D-R-M-*, 29 I&N Dec. 202 (A.G. 2025) (reinstating *Matter of L-E-A-*, 27 I&N Dec. 581 (A.G. 2019) ("*L-E-A- II*")), and *Matter of S-S-F-M-*, 29 I&N Dec. 207 (A.G. 2025) (reinstating *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) ("*A-B- I*"), and *Matter of A-B-*, 28 I&N Dec. 199 (A.G. 2021) ("*A-B- II*").[7] As the Immigration Judge applied *Matter of A-B- I* and *Matter of L-E-A- II*, both of which were in effect at the time of the decision, there is no need to remand based on the intervening precedent.

Moreover, we agree with the Immigration Judge that "Salvadoran women unable to leave a relationship due to society and social pressures" and "Salvadoran women unable to leave a relationship due to low social status due to gender" are groups defined by the persecution of their members and, therefore, do not exist independently of the harm asserted by the respondent. As such, they are not cognizable under the INA. *See Matter of A-B- I*, 27 I&N Dec. at 334–35. The Immigration Judge also properly determined that the record does not establish that these groups are perceived, considered, or recognized by Salvadoran society as distinct social groups. *See Matter of W-G-R-*, 26 I&N Dec. 208, 217 (BIA 2014) (defining social distinction), *vacated in part on other grounds sub nom. Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016). As found by the Immigration Judge, the country conditions evidence in the record indicates that gender-based violence affects Salvadoran women irrespective of their relationship status.

---

group because she did address the issue on appeal. *Matter of P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020).

[7]   *Matter of L-E-A- II* had previously been vacated by *Matter of L-E-A-*, 28 I&N Dec. 304 (A.G. 2021) ("*L-E-A- III*"). *Matter of A-B- I* and *Matter of A-B- II* had been vacated by *Matter of A-B-*, 28 I&N Dec. 307 (A.G. 2021) ("*A-B- III*"). In issuing *Matter of R-E-R-M- & J-D-R-M-* and *Matter of S-S-F-M-*, the Attorney General restored the case law that controlled at the time the Immigration Judge issued the decision in this case.

We also agree with the Immigration Judge that "Salvadoran women in a domestic relationship with a 'machista' male" is not a cognizable social group because it is not defined with the requisite particularity. *See Matter of K-E-S-G-*, 29 I&N Dec. at 147. As set forth by the Immigration Judge, the terms "domestic relationship" and "'machista' male" are subjective, ambiguous, and not clearly defined within Salvadoran society. *See Matter of M-E-V-G-*, 26 I&N Dec. 227, 239, 241 (BIA 2014) (defining particularity); *accord Matter of W-G-R-*, 26 I&N Dec. at 214. Furthermore, the Immigration Judge properly found that the country conditions evidence in the record does not establish that members of this group are perceived as a socially distinct group in Salvadoran society. In addition, we agree with the Immigration Judge that the proposed social groups "non-biologically related family members of [the respondent's husband]" and "extended family members of [her husband's sister]" are not defined with sufficient particularity because these groups are overbroad and defined with amorphous terms.

The minor respondent did not demonstrate that she is a member of proposed groups (1) through (6) discussed above. The respondents argue that, with respect to the minor respondent, "women in El Salvador" should be interpreted as "females in El Salvador" as a way to challenge the Immigration Judge's finding that the minor respondent was not a member of groups (1) through (6) because she is a child and not a woman. We decline to address this newly articulated particular social group as it was not advanced before the Immigration Judge. *Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189 (BIA 2018). Moreover, the alternative group is not cognizable pursuant to *Matter of K-E-S-G-*, 28 I&N Dec. at 151.

The absence of a protected ground is dispositive of the respondents' eligibility for asylum and withholding of removal under sections 208 and 241(b)(3) of the INA, 8 U.S.C. §§ 1158, 1231(b)(3). Therefore, we decline to reach the respondents' remaining arguments challenging the Immigration Judge's denial of relief under the INA. *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

## III. Protection under the CAT

We discern no error in the Immigration Judge's denial of the respondent's request for protection under the CAT. 8 C.F.R. §§ 1208.16(c), 1208.18. The respondent asserts that she has a clear probability of torture regardless of where she settles in El Salvador because of the gangs' use of violence against

women and her prior experience with her husband.  She also points to the country conditions evidence of corruption and impunity with regard to gender violence and the government's ineffectiveness at deterring and responding to crime.

The respondent may fear the gangs and her husband based on her past experiences, but her fear does not demonstrate that she "faces a particularized, ongoing risk of future torture."  *Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 707 (9th Cir. 2022); *see also Matter of M-F-O-*, 28 I&N Dec. 408, 414 (BIA 2021).  Moreover, "[e]vidence that a government has been generally ineffective in preventing or investigating criminal activities does not alone establish that a public official will acquiesce to torture."  *Matter of O-A-R-G-*, 29 I&N Dec. 30, 36 (BIA 2025).  The respondent's fear is based on a chain of assumptions and a fear of what might happen, rather than on evidence that meets her burden of demonstrating that it is more likely than not she will be subjected to torture.  8 C.F.R. § 1208.18(a)(1); *Matter of M-B-A-*, 23 I&N Dec. 474, 479–80 (BIA 2002); *Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (A.G. 2006) (holding that each link in the hypothetical chain of events leading to the claim of likely torture must be established as more likely than not to occur).[8]

Finally, the respondents argue that the Immigration Judge erred in not considering the minor respondent's separate claim for protection under the CAT.  However, the minor respondent's attorney at the merits hearing did not argue that she warranted CAT protection for reasons other than what was argued on behalf of her mother.  As a separate CAT claim was not raised before the Immigration Judge, the issue is not properly before us.  *Matter of Jimenez*, 21 I&N Dec. at 570 n.2; *Matter of Fedorenko*, 19 I&N Dec. at 73–74.  The Immigration Judge's discussion and findings regarding CAT protection referenced both respondents and thus adequately addressed the claims presented to the Immigration Court.

Accordingly, we will dismiss the respondents' appeal.

**ORDER:**  The appeal is dismissed.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents

---

[8] The respondent's argument that she will be tortured as a gang member based on her deportee status is not properly before the Board because she did not raise the argument before the Immigration Judge.  *Matter of Jimenez*, 21 I&N Dec. 567, 570 n.2 (BIA 1996).

necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the INA, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2026). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).